4990876.op

NO. 4-99-0876

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

JOSEPH SNELL, D.C.,

Plaintiff-Appellant,

v.

THE DEPARTMENT OF PROFESSIONAL REGULATION OF THE STATE OF ILLINOIS;

NIKKI M. ZOLLAR, Director for the Department of Professional Regulation of the State of Illinois in her Official Capacity; SHARI DAM, Administrative Law Judge; and THE MEDICAL DISCIPLINARY BOARD OF THE DEPARTMENT OF PROFESSIONAL REGULATION OF THE STATE OF ILLINOIS,

Defendants-Appellees.

)

)

)

)

)

)

)

)

)

)

)

)

)

)

Appeal from

Circuit Court of

Champaign County

No. 98MR7

Honorable

John R. DeLaMar,

Judge Presiding.

_________________________________________________________________

PRESIDING JUSTICE STEIGMANN delivered the opinion of the court:

Plaintiff, Joseph Snell, a licensed chiropractor, appeals from a September 1999 circuit court order affirming sanctions imposed against him by defendants, the Illinois Department of Professional Regulation (Department) and its then-director, Nikki M. Zollar, based on Snell's violation of section 26 of the Medical Practice Act of 1987 (Act) (225 ILCS 60/26 (West Supp. 1999)).  Snell argues that (1) the Department's decision was against the manifest weight of the evidence; and (2) section 26, as applied to him, violates his first amendment right to free speech.  Because we agree with Snell's second argument, we reverse. 

I. BACKGROUND

In December 1996, the Department filed an administrative complaint against Snell, which alleged, 
inter
 
alia
, that Snell violated the advertising provisions set forth in section 26 of the Act (225 ILCS 60/26 (West Supp. 1999)) by displaying in his office waiting room a 27-page booklet entitled "Our Patients Speak" (hereafter booklet).  Section 26(2) of the Act provides, in pertinent part, that "[i]t is unlawful for any person licensed under this Act to use testimonials or claims of superior quality of care to entice the public."  225 ILCS 60/26(2) (West Supp. 1999).  

At a June 1997 administrative hearing, the evidence showed that the booklet contained preprinted forms entitled "My Chiropractic Story."  Each form contained 14 questions addressed to Snell's past or current patients.  The questions included the following:  (1) "What led to your decision to try chiropractic?" (2) "Did you have any doubts that chiropractic would help you?" (3) "What were your first impressions of chiropractic, this office, and the doctor?" (4) "Is anyone else in your family a chiropractic patient?" (5) "How has chiropractic helped them?" (6) "What would you recommend to others who are sick, suffering, or in pain?" (7) "How do you feel about chiropractic, now that you have enjoyed its benefits?"  The answers to the questions were supplied by the patients in their own handwriting, and each form was accompanied by the photograph and signature of the patient.  

Following the hearing, the administrative law judge (ALJ) issued her ruling and found that the booklet contained testimonials in violation of section 26 of the Act.  Based upon this finding, the ALJ recommended that Snell be reprimanded, pay a $2,500 fine, and complete certain continuing education courses.  In September 1997, the Department's medical disciplinary board adopted the ALJ's findings of fact, conclusions of law, and recommendations, and ordered that Snell pay a $2,500 fine.  

Snell subsequently sought administrative review of the Department's decision by the circuit court.  In September 1999, the circuit court upheld the Department's decision.  This appeal followed.    

II. FIRST AMENDMENT CHALLENGE 

Initially, we note that constitutional questions will not be considered where the case can be determined on other, nonconstitutional grounds.  See 
People v. McDaniel
 164 Ill. 2d 173, 180, 647 N.E.2d 266, 269 (1995); see also 
Lacny v. Police Board
, 291 Ill. App. 3d 397, 400, 683 N.E.2d 1265, 1267 (1997).  However, because it appears that defendants would prevail on the merits of Snell's nonconstitutional claim, we address Snell's constitutional argument.

Snell argues that by prohibiting his use of the booklet, section 26 violates his first amendment right to free speech.  We agree. 

A. Protection of Commercial Speech

Constitutional protection for commercial speech is a relatively recent development in the Supreme Court's first amendment jurisprudence.  Prior to the mid-1970s, the Supreme Court adhered to the broad rule that the Constitution imposes no restraint on governments with respect to commercial speech.  See 
Valentine v. Chrestensen
, 316 U.S. 52, 54, 86 L. Ed. 1262, 1265, 62 S. Ct. 920, 921 (1942).  In 1976, the Court changed course in 
Virginia State Board of Pharmacy v. Virginia Citizens Consumer Council, Inc.
, 425 U.S. 748, 761-62, 48 L. Ed. 2d 346, 358, 96 S. Ct. 1817, 1825-26 (1976), holding that purely commercial speech is entitled to first amendment protection from unwarranted governmental regulation.  The Court expressed the belief that the free flow of commercial information is indispensable to the proper allocation of resources in a free enterprise system because it informs the numerous private decisions that drive the system.  
Virginia State Board of Pharmacy
, 425 U.S. at 765, 48 L. Ed. 2d at 360, 96 S. Ct. at 1827.

The Supreme Court has continued to define the appropriate constitutional protection afforded to commercial speech since its holding in 
Virginia State Board of Pharmacy
.  See 
Florida Bar v. Went For It, Inc.
, 515 U.S. 618, 622-23, 132 L. Ed. 2d 541, 548-49, 115 S. Ct. 2371, 2375 (1995) (listing history and holdings of the Court's commercial speech cases).  However, even today, first amendment protection of commercial speech is not absolute.  "'"[C]ommercial speech [enjoys] a limited measure of protection, commensurate with its subordinate position in the scale of [f]irst [a]mendment values," and is subject to "modes of regulation that might be impermissible in the realm of noncommercial expression."'"  
Florida Bar
, 515 U.S. at 623, 132 L. Ed. 2d at 549, 115 S. Ct. at 2375, quoting 
Board of Trustees of State University of New York v. Fox
, 492 U.S. 469, 477, 106 L. Ed. 2d 388, 402, 109 S. Ct. 3028, 3033 (1989), quoting 
Ohralik v. Ohio State Bar Ass'n
, 436 U.S. 447, 456, 56 L. Ed. 2d 444, 453, 98 S. Ct. 1912, 1918 (1978).        

B. 
Central
 
Hudson
's Four-Part Test

Restrictions on commercial speech are analyzed under the four-part test set out in 
Central Hudson Gas & Electric Corp. v. Public Service Comm'n
, 447 U.S. 557, 566, 65 L. Ed. 2d 341, 351, 100 S. Ct. 2343, 2351 (1980):

"At the outset, we must determine whether the expression is protected by the [f]irst [a]mendment.  For commercial speech to come within that provision, it at least must concern lawful activity and not be misleading.  Next, we ask whether the asserted governmental interest is substantial.  If both inquiries yield positive answers, we must determine whether the regulation directly advances the governmental interest asserted, and whether it is not more extensive than is necessary to serve that interest."

In further refinement of the 
Central Hudson
 test, the Supreme Court in 
In re R.M.J.
, 455 U.S. 191, 203, 71 L. Ed. 2d 64, 74, 102 S. Ct. 929, 937 (1982), held that while the State may entirely prohibit misleading advertising, it may not absolutely prohibit potentially misleading advertising if the information may also be presented in a way that is not deceptive.  In addition, the Supreme Court has noted that the four parts of the 
Central Hudson
 test are not entirely discrete.  
Greater New Orleans Broadcasting Ass'n
, 527 U.S. 173, 183-84, 144 L. Ed. 2d 161, 174, 119 S. Ct. 1923, 1930 (1999).  "All are important and, to a certain extent, interrelated:  Each raises a relevant question that may not be dispositive to the [f]irst [a]mendment inquiry, but the answer to which may inform a judgment concerning the other three."  
Greater New Orleans Broadcasting
, 527 U.S. at 183-84, 144 L. Ed. 2d at 174, 119 S. Ct. at 1930 (1999).

1. 
The
 
First
 
Prong
 
of
 
the
 
Central
 
Hudson
 
Test

At the outset, we conclude that the booklet constitutes commercial speech.  See 
Central Hudson
, 447 U.S. at 561-62, 65 L. Ed. 2d at 348, 100 S. Ct. at 2349 (commercial speech consists of "expression related solely to the economic interests of the speaker and its audience" and of "'speech proposing a commercial transaction'"), quoting 
Ohrelik
, 436 U.S. at 456, 56 L. Ed. 2d at 453, 98 S. Ct. at 1918. 

Defendants do not contend that the booklet is actually deceptive, misleading, false, or illegal.  Indeed, at oral argument before this court, the Department conceded that the booklet itself is not deceptive, misleading, or false.  Instead, the Department asserts that the testimonials in the booklet, like all testimonials, are "inherently misleading."  We disagree.  

In 
Desnick v. Department of Professional Regulation
, 171 Ill. 2d 510, 523, 665 N.E.2d 1346, 1354 (1996), our supreme court noted that because the first amendment's concern for commercial speech is based on the informational function of advertising, the government may legitimately suppress commercial expression that is more likely to deceive the public than inform it.  See 
Bates v. State Bar of Arizona
, 433 U.S. 350, 383, 53 L. Ed. 2d 810, 835, 97 S. Ct. 2691, 2709 (1977) (false, deceptive, or misleading advertising is subject to restraint).

A "testimonial" has been defined as "[a] formal or written statement testifying to a particular truth or fact" (American Heritage Dictionary 1330 (1975)) and as "a statement testifying to benefits received" (Merriam-Webster's Collegiate Dictionary 1218 (10th ed. 1998)).  Although testimonials have the potential to be misleading, there is nothing inherently misleading about them.  Testimonials are not innately more likely to deceive the public than inform it.  Indeed, the testimonials in Snell's  booklet, which included candid patient comments such as (1) "Examine all your options.  See if a chiropractor or another specialist can help"; (2) "[D]epending on the problem, I'd suggest a consultation with a chiropractor"; and (3) "[chiropractic treatment helped my] wife 75%," are prime examples of testimonials that are neither misleading nor deceptive.           Because we conclude that the testimonials in the booklet are not inherently misleading, we further conclude that the booklet constitutes protected speech under the first amendment.  

In so concluding, we note that 
Ardt v. Illinois Department of Professional Regulation
, 154 Ill. 2d 138, 607 N.E.2d 1226 (1992), does not require a different result.  In that case, the Department disciplined a dentist, in part, on the ground that he violated section 45 of the Illinois Dental Practice Act, which prohibits claims of superior quality of care (Ill. Rev. Stat. 1987, ch. 111, par. 2345(h) (now 225 ILCS 25/45(h)(1) (West 1998))).  
Ardt
, 154 Ill. 2d at 141, 607 N.E.2d at 1227-28.  The dentist responded that the provision contravened his first amendment right to free speech.  
Ardt
, 154 Ill. 2d at 151, 607 N.E.2d at 1232.  The dentist's ads represented, in pertinent part, that he provided "quality dentistry."  The supreme court concluded that the phrase "quality dentistry" implied superior quality, was inherently misleading, and thus could be prohibited by the State.  
Ardt
, 154 Ill. 2d at 154, 607 N.E.2d at 1233.  

Even assuming that the supreme court would still adhere to its view that a "quality dentistry" advertisement is inherently misleading (for a cogent discussion regarding why such an advertisement is not inherently misleading, see 
Ardt
, 154 Ill. 2d at 158-60, 607 N.E.2d at 1235-36 (Heiple, J., concurring in part and dissenting in part)), 
Ardt
 is inapposite.  In that case, the supreme court specifically addressed a challenge to that portion of section 45 of the Illinois Dental Practice Act prohibiting "claims of superior quality of care" (Ill. Rev. Stat., ch. 111, par. 2345(h)(1) (now 225 ILCS 25/45 (h)(1) (West 1998))).  
Ardt
, 154 Ill. 2d at 151-57, 607 N.E.2d 1232-35.  Unlike the present case, the 
Ardt
 court did not have before it, and, thus, did not address, any challenge to the portion of section 45 that prohibits the use of testimonials.  (Both section 26 of the Act (225 ILCS 60/26(2) (West Supp. 1999)) and section 45 of the Illinois Dental Practice Act (225 ILCS 25/45 (West 1998)) prohibit "testimonials or claims of superior quality of care to entice the public.")  

2. 
The
 
Second
 
Prong
 
of
 
the
 
Central
 
Hudson
 
Test
 

The second prong of the 
Central Hudson
 test asks whether the asserted governmental interest served by the speech restriction is substantial.  
Greater New Orleans Broadcasting
, 527 U.S. at 185, 144 L. Ed. 2d at 175, 119 S. Ct. at 1931.  

Defendants contend that the State has "a substantial interest in restricting physicians' commercial speech to that which is not misleading" and which is helpful and informative to the potential consumer.  We agree. 

The State has a substantial interest in regulating the medical profession.  
Desnick
, 171 Ill. 2d at 528, 665 N.E.2d at 1356.  Our supreme court has also recognized that "the State has a very real and compelling interest in restricting the advertising of health-care services to those which are truthful, informative[,] and helpful to the potential consumer in making an intelligent decision."  
Talsky v. Department of Registration & Education
, 68 Ill. 2d 579, 591, 370 N.E.2d 173, 179 (1977). Accordingly, we conclude that defendants have satisfied the second prong of 
Central Hudson
.    

3. 
The
 
Third
 
and
 
Fourth
 
Prongs
 
of
 
the
 
Central
 
Hudson
 
Test
 

The third prong of the 
Central Hudson
 test asks whether the speech restriction directly and materially advances the asserted governmental interest.  
Greater New Orleans Broadcasting
, 527 U.S. at 188, 144 L. Ed. 2d at 177, 119 S. Ct. at 1932.  "This burden is not satisfied by mere speculation or conjecture; rather, a governmental body seeking to sustain a restriction on commercial speech must demonstrate that the harms it recites are real and that its restriction will in fact alleviate them to a material degree."  
Edenfield v. Fane
, 507 U.S. 761, 770-71, 123 L. Ed. 2d 543, 555, 113 S. Ct. 1792, 1800 (1993).  Consequently, "the regulation may not be sustained if it provides only ineffective or remote support for the government's purpose."  
Central Hudson
, 447 U.S. at 564, 65 L. Ed. 2d at 350, 100 S. Ct. at 2350.  The Supreme Court has stressed that "this requirement [is] critical; otherwise, 'a State could with ease restrict commercial speech in the service of other objectives that could not themselves justify a burden on commercial expression.'"  
Rubin v. Coors Brewing Co.
, 514 U.S. 476, 487, 131 L. Ed. 2d 532, 542, 115 S. Ct. 1585, 1592 (1995), quoting  
Edenfield
, 507 U.S. at 771, 123 L. Ed. 2d at 555, 113 S. Ct. at 1800.    

The fourth prong of the 
Central Hudson
 test complements the direct-advancement inquiry of the third part, asking whether the speech restriction is not more extensive than necessary to serve the interests that support it.  
Greater New Orleans Broadcasting
, 527 U.S. at 188, 144 L. Ed. 2d at 177, 119 S. Ct. at 1932.  The government is not required to employ the least restrictive means conceivable, but the challenged regulation must be narrowly tailored such that the regulation and the asserted interest demonstrate "a fit that is not necessarily perfect, but reasonable; that represents not necessarily the single best disposition but one whose scope 'is in proportion to the interest served'."  
Fox
, 492 U.S. at 480, 106 L. Ed. 2d at 404, 109 S. Ct. at 3035, quoting 
In re R.M.J.
 455 U.S. at 203, 71 L. Ed. 2d at 74, 102 S. Ct. at 937.       

Defendants baldly assert that (1) the restriction "protects the public from deceptive commercial speech" and "from being misled by any claims of beneficial results"; (2) section 26 "is limited in scope and prohibits only a discrete f[or]m of advertising that is inherently misleading"; and (3) the restriction is "narrowly drawn to advance Illinois' substantial interest in restricting the advertising of health[-]care services to that which is informative and helpful to the potential consumer in making an intelligent decision."

The record before us contains no anecdotal accounts of actual harm to potential consumers of chiropractic who were misled or deceived by the booklet's testimonials.  In addition, defendants do not point to any studies or empirical evidence suggesting that the testimonials in the booklet, or any other types of testimonials, mislead or deceive potential consumers.  Defendants correctly point out that speech restrictions have been upheld on "commonsense links" between the harms the State seeks to prevent and the State's speech restriction.
  See 
Desnick
, 171 Ill. 2d at 533, 665 N.E.2d at 1359 (noting that the Supreme Court has upheld speech restrictions on such commonsense links and listing those cases).  However, we fail to see any commonsense link between a 
categorical
 ban on testimonials, which, as we earlier concluded, are not inherently misleading, and the purported harms the State seeks to prevent.  In our judgment, such an outright ban does not directly and materially advance the State's substantial interests.  See 
R.M.J.
, 455 U.S. at 203, 71 L. Ed. 2d at 74, 102 S. Ct. at 937 (the State may not absolutely prohibit potentially misleading advertising if the information may also be presented in a way that is not deceptive).     

In addition, we conclude that section 26, by banning testimonials outright, sacrifices an intolerable amount of truthful speech about lawful conduct.  We further conclude that the complete ban on testimonials is not in proportion to the State's admittedly important interests and is unnecessarily and disproportionately broad in the scope of communication it prohibits.  See 
Ardt
, 154 Ill. 2d at 152, 607 N.E.2d at 1232 (holding that categorical ban of the phrase "family dentistry" was an unconstitutional abridgement of free speech because the phrase was only potentially misleading); see also 
Bailey v. Morales
, 190 F.3d 320, 324-25 (5th Cir. 1999) (holding unconstitutional a Texas law prohibiting chiropractors from soliciting as patients individuals with a special need for chiropractic services arising out of an accident or preexisting condition, in part, because the law was not reasonably tailored to the harm the State sought to prevent).  In sum, if a testimonial is not misleading, not false, and not deceptive, then a governmental ban of it falls afoul of the first amendment.  

For all of the above reasons, we hold that by prohibiting Snell's use of the booklet, section 26 of the Act violates Snell's first amendment right to free speech.  Accordingly, we reverse the circuit court's decision upholding the Department's decision. 

III. CONCLUSION

For the reasons stated, we reverse the circuit court's decision.

Reversed.

MYERSCOUGH, J., concurs.

COOK, J., dissents.

JUSTICE COOK, dissenting:

I respectfully dissent because I am unable to reconcile the majority's decision with Illinois Supreme Court precedent.

State regulation of commercial speech is permissible by means of appropriate time, place, and manner restrictions and where such speech is false or misleading.  
Desnick
, 171 Ill. 2d at 518, 665 N.E.2d at 1352.  Further, the overbreadth doctrine, traditionally utilized in analyzing challenges to a regulation's constitutionality, does not apply to commercial speech challenges.  
Desnick
, 171 Ill. 2d at 519, 665 N.E.2d at 1353.  Thus, the challenging party may not simply attack the regulation's validity, claiming that it infringes protected speech of others even if it might constitutionally be applied to him.  Rather, he must claim that the acts that are the subject of the litigation fall outside what a properly drawn regulation could cover.  
Desnick
, 171 Ill. 2d at 520, 665 N.E.2d at 1353.  A challenge to the application of a commercial speech restriction is analyzed under the four-part framework set out in 
Central Hudson
, 447 U.S. at 566, 65 L. Ed. 2d at 351, 100 S. Ct. at 2351.       

Unlike the majority, I conclude that the first prong of the 
Central Hudson
 test is dispositive in this matter.  The United States Supreme Court did note in a recent case that "[t]he four parts of the 
Central Hudson
 test are not entirely discrete" and that "[a]ll are important and, to a certain extent, interrelated."  
Greater New Orleans Broadcasting
, 527 U.S. at 183-84, 144 L. Ed. 2d at 174, 119 S. Ct. at 1930.  However, the parties there agreed that the speech at issue was not misleading.  
Greater New Orleans Broadcasting
, 527 U.S. at 184, 144 L. Ed. 2d at 175, 119 S. Ct. at 1930.  I conclude that the testimonials at issue here are "inherently misleading" for purposes of the 
Central Hudson
 test when viewed in light of the Supreme Court of Illinois' decision in 
Ardt
.

The majority has discussed why it believes 
Ardt
 is not dispositive here; however, I conclude that 
Ardt
 requires affirmance of the circuit court.  Section 26 of the Act regulates advertising and prohibits chiropractors from utilizing testimonials or claims of superior quality to entice the public.  225 ILCS 60/26 (West Supp. 1999).  In 
Ardt
, the court applied this same language and concluded that a dentist's advertisement promoting "'quality dentistry for all family needs and all ages'" was inherently misleading because the statement could not be measured or tested empirically.  
Ardt
, 154 Ill. 2d at 154, 607 N.E.2d at 1233.  I find particularly applicable the court's statement:

"Whether the quality of any one dentist's 

services is superior to that of his colleagues 

is a matter of opinion for the dentist's 

patients to decide after treatment.  
Prior
 
to
 

treatment
 
they
 
should
 
not
 
be
 
misled
 
by
 
adver-

tising
 
which
 
might
 
prove
 
to
 
make
 
an
 
empty
 

claim
."  (Emphasis added.)  
Ardt
, 154 Ill. 2d 

at 154, 607 N.E.2d at 1233.  

See also 
Talsky
, 68 Ill. 2d at 590-91, 370 N.E.2d at 178-79 (upholding advertising limitations on chiropractor, court determined that the public is particularly susceptible to advertising or promises of medical relief and that the State has a compelling interest to guard against potential abuse).

Each of the "chiropractic stories" contained in the booklet were favorable and supportive of Snell and his practice.  Snell elicited praise with questions directly related to the benefits received by the patient and with questions that asked patients to "describe [their] results, including time involved."  He elicited statements such as the following:  "little to zero pain--took three months"; "Severe pain disappeared after a couple treatments and only slight discomfort was left after several weeks"; "Pain decreased in about 2 weeks.  In about 6 weeks all pain was gone"; and "Just after 2 mo. I feel 100% better than I did when I came to Dr. Snell."

Other questions seemed designed to elicit testimonials.  Question No. 12 asks:  "What would you recommend to others who are sick, suffering, or in pain?"  Some of the answers included:  "Chiropractic can help you feel healthier and more alive"; "Try a chiropractor.  They may be able to help"; "Go see Dr. Snell"; "I would tell them to go to Dr. Snell right away"; "I would send them to Dr. Snell right away"; "I would send them to Dr. Snell"; "Go to Snell Chiropractic Center.  It helped me with my pain!"

Finally, some of the requests for information were phrased so as to assume a favorable response or an expression of appreciation.  Question No. 11 asks:  "How do you feel about chiropractic, now that you have enjoyed its benefits?"  Answers to this inquiry included the following:  "I believe in the ability of a chiropractor to make a person feel 100% better" and "I feel great about it.  I have never felt so good in my life."

Like the advertisement of "quality dentistry" at issue in 
Ardt
, these statements cannot be measured or tested empirically.  Further, "testimonials," particularly when assembled as they were in this case, imply to Snell's waiting room patients that the treatment advertised is 100% or nearly 100% effective for all persons and is superior to other methods.  No unfavorable testimonials were made available in the waiting room.  Since the Supreme Court of Illinois found the phrase "quality dentistry" to be inherently misleading, I am led to the same conclusion with respect to the testimonials and statements contained in the booklet.  I find the testimonials at issue here to be even more misleading than using the phrase "quality dentistry" in an advertisement.  Since inherently misleading commercial speech may be completely prohibited, I would end the analysis there.  
Ardt
, 154 Ill. 2d at 155, 607 N.E.2d at 1234.

As an additional matter, I note that the majority opinion, taken to its logical conclusion, would require the Department to present evidence to show that a particular testimonial is deceptive, misleading, or false in order to bar its use.  
Ardt
 did not impose a similar duty upon the Department to establish that the public was actually misled by the phrase "quality dentistry."  The majority places an impossible burden on the Department, requiring it to question the particular chiropractor's clients to ascertain the effect that a certain testimonial had upon them.  Such a requirement fails to recognize the scope of the legislative power in this area.  The State has a substantial interest in regulating the medical profession, and in carrying out that interest it has the power to draw lines, to classify.  It is not only inevitable but necessary in the management of the medical profession that lines be drawn.  See 
Jacobson v. Department of Public Aid
, 269 Ill. App. 3d 359, 368, 646 N.E.2d 949, 955 (1994) (public welfare system).  I would find that the ban on the testimonials at issue here does not violate the first amendment.