(No. 94073.—

THAD VUAGNIAUX, Appellee, v. THE DEPART-MENT OF PROFESSIONAL REGULATION *et al.*, Appellants.

*Opinion filed November 20, 2003.—Rehearing denied January 26, 2004.*

176

McMORROW, C.J., joined by FREEMAN and GARMAN, JJ., dissenting.

James E. Ryan and Lisa Madigan, Attorneys General,

of Springfield (Joel D. Bertocchi and Gary Feinerman, Solicitors General, and Paul Racette, Assistant Attorney General, of Chicago, of counsel), for appellants.

Earl L. Vuagniaux, of Edwardsville, for appellee.

JUSTICE RARICK delivered the opinion of the court:

Dr. Thad Vuagniaux, a licensed chiropractic physician, was reprimanded by the Department of Professional Regulation (the Department) and fined the sum of $2,500 for violating the advertising provisions set forth in section 26 of the Medical Practice Act of 1987 (225 ILCS 60/26 (West 1998)). On administrative review of the Department's decision, the circuit court of Madison County reversed. In so doing, it found various sections of the Medical Practice Act, including section 26's advertising restrictions, to be unconstitutional and void. The Department appealed. Because the circuit court's judgment held statutes of the State of Illinois to be invalid, the appeal was taken directly to our court. 134 Ill. 2d R. 302(a). For the reasons that follow, we affirm in part, reverse in part and remand for further proceedings.

Although the record in this case is voluminous, the facts necessary to the disposition are straightforward. Thad Vuagniaux graduated from Logan Chiropractic College in 1993 and was licensed as a chiropractor by the State of Illinois in 1994. At all relevant times, Vuagniaux has maintained a practice in Madison County, Illinois, located in the St. Louis, Missouri, metropolitan area.

Two years after receiving his license, Vuagniaux published a series of advertisements for his practice in the St. Louis Post-Dispatch. The advertisements, which ran throughout 1996, appeared in editions of the paper circulated in Illinois. Each ad addressed a different ailment. The ailments discussed were migraine headaches, asthma, fibromyalgia, carpal tunnel syndrome, Crohn's Disease/irritable bowel syndrome, learning disorders,

"TMJ Dysfunction," whiplash and vertebral subluxations, and Meniere's Disease/vertigo.

Vuagniaux's ads described the causes and symptoms of the foregoing conditions and linked each of them to interference with the brain stem. The ads stated that a procedure termed "Specific Chiropractic" corrects or removes interference to the brain stem, enabling sufferers to recover normal function and achieve their "fullest health potential without the use of drugs or surgery."

Vuagniaux's ads publicized that he employed "Specific Chiropractic" in his practice. In fact, the first two ads represented that he was one of only two "Certified Brain Stem Specialists" in the St. Louis metropolitan area. Those ads included, under his photo, the notation that he is a "Kale Certified Brain Stem Specialist" and an officer of the "Kale International Research Council." Vuagniaux's third ad deleted the references to his being certified or a specialist and indicated simply that he was one of only two "Specific Chiropractors" in the St. Louis area. The same claim appeared in the fourth ad, but was deleted from the fifth and all subsequent ads.

Publication of Vuagniaux's ads elicited complaints from other chiropractors. After investigating the matter, the Department initiated disciplinary proceedings against Vuagniaux pursuant to section 22 of the Medical Practice Act of 1987 (225 ILCS 60/22 (West 1998)). The Department's complaint, which contained three counts, asked that Vuagniaux's license be suspended, revoked, or otherwise disciplined on the grounds that his ads violated the provisions of the Medical Practice Act governing advertising.

Advertising by persons licensed under the Medical Malpractice Act is subject to section 26 of the statute (225 ILCS 60/26 (West 1998)). Section 26 permits licensees to advertise the availability of their professional services in the public media or on the premises where

the services are rendered. The statute provides, however, that any such advertising is limited to certain types of information. Information that may be published under the statute includes the licensee's "name, title, office hours, address and telephone number" (225 ILCS 60/26(a) (West 1998)); his "usual and customary fees for routine professional services" (225 ILCS 60/26(c) (West 1998)); his "areas of specialization, including appropriate board certification or limitation of professional practice" (225 ILCS 60/26(b) (West 1998)); announcement of the "opening of, change of, absence from, or return to business" (225 ILCS 60/26(d) (West 1998)); announcement of changes in professional licensed staff (225 ILCS 60/26(e) (West 1998)); and issuance of business or appointment cards (225 ILCS 60/26(f) (West 1998)).

Counts I and III of the Department's complaint both charged violations of the foregoing provisions. Count III made a general allegation that Vuagniaux's ads all contravened the Medical Practice Act because they are "not limited in the information provided to the information permitted in [section 26]." Count I focused specifically on the ads representing Vuagniaux as a "Certified Brain Stem Specialist" and a "Kale Certified Brain Stem Specialist." According to the Department, those ads violated the Act because the specialties identified in the ad were not legitimate. In the words of the complaint, "[t]here is no appropriate board certification as a Certified Brain Stem Specialist or a Kale Certified Brain Stem Specialist in Chiropractic medicine."

In addition to limiting the types of information a licensee may include in his advertising, section 26 of the Medical Practice Act also forbids a licensee from using statements in his advertising that contain "false, fraudulent, deceptive or misleading material or *** statements which play upon the vanity or fears of the public." 225 ILCS 60/26 (West 1998). Count II of the Department's

complaint was premised on that prohibition. It alleged that Vuagniaux's claims that chiropractic treatment of the brain stem will treat asthma, Meniere's disease, learning disorders and the other conditions mentioned in the various ads "are deceptive or misleading and play upon the fears of the public."

After the Department served Vuagniaux with its administrative complaint, Vuagniaux sought declaratory and injunctive relief from the circuit court of Madison County to prevent the disciplinary proceedings against him from going forward. Vuagniaux's complaint, as amended, raised a variety of issues regarding the fairness and constitutionality of the process by which chiropractors in Illinois are subject to discipline and the standards by which their conduct is judged. Among the claims he made were (1) that subjecting chiropractors to regulation by the Department's Medical Disciplinary Board, which by statute includes but a single chiropractor among its seven voting members, denies chiropractors their rights to due process and equal protection, (2) that the advertising provisions in section 26 of the Medical Practice Act are uncertain and vague, and the Department has failed to enact standards for assessing whether those provisions have been violated, (3) that the Department has failed to adopt meaningful rules of discovery, and (4) that the Department should not be allowed to limit the location of evidentiary hearings in disciplinary matters to Chicago and Springfield.

At the same time he pursued this civil action, Vuagniaux vigorously contested various developments in the Department's disciplinary action against him. Among the actions he took was to move for exclusion of Dr. Lacy Cook, the sole chiropractic member of the Medical Disciplinary Board, from further participation in his case. Vuagniaux based that motion on claims that Cook would be prejudiced against him and the chiropractic theories

he followed. Although the administrative law judge assigned to the case found no actual prejudice by Cook, the administrative law judge granted Vuagniaux's motion and excluded Cook to avoid the appearance of prejudice.

Once Cook was excluded from the case, the Department moved for appointment of a "Special Chiropractor" to the Medical Disciplinary Board so that the Board would include a chiropractic member when it considered Vuagniaux's case. The administrative law judge referred the motion to the Board for its consideration. The Board granted the motion and named Dr. Roger Pope, a doctor of chiropractic, to serve in Cook's place on the Board for the purposes of these proceedings.

Vuagniaux raised objections to Pope's appointment in both the disciplinary proceeding and the civil action. The principle basis for Vuagniaux's objection was that the Board's appointment violated the Medical Practice Act, which specifies that members of the Medical Disciplinary Board are "to be appointed by the Governor by and with the advice and consent of the Senate." 225 ILCS 60/7(A) (West 1998). Vuagniaux further claimed that the appointment would infringe on his right to confront and cross-examine witnesses.

Vuagniaux's objection to Pope's inclusion on the Board went unheeded. A motion he filed in the administrative proceeding for judgment on the pleadings or, in the alternative, to dismiss, was denied. Vuagniaux then moved for a preliminary injunction in his civil action. When that motion was also denied, an administrative hearing on the Department's disciplinary complaint was convened. The hearing took place over a series of dates during the summer of 1998. In the course of the hearing, the administrative law judge allowed the Department to delete from count II of its complaint the allegations pertaining to whiplash and vertebral subluxations. Experts witnesses were called by both sides, and Vuagniaux testified on his own behalf.

Following the hearing, the administrative law judge issued her findings and recommendations in accordance with section 35 of the Medical Practice Act (225 ILCS 60/35 (West 1998)). The administrative law judge concluded that the Department had proved all three counts of its complaint by clear and convincing evidence and recommended to the Medical Disciplinary Board that Vuagniaux be fined the sum of $2,500. The Medical Disciplinary Board adopted the administrative law judge's findings of fact and conclusions of law. It also agreed with the administrative law judge's recommendation that Vuagniaux be fined $2,500. Unlike the administrative law judge, however, the Board believed that the sanctions imposed on Vuagniaux should also include a reprimand. The Board's recommendation, made with the concurrence of five members, including the specially appointed chiropractor, Pope, was adopted by the Department's director. In an order signed by the director and dated December 16, 1998, the Department reprimanded Vuagniaux's license and ordered him to pay a $2,500 fine.

Vuagniaux sought administrative review of the Department's decision pursuant to article III of the Code of Civil Procedure (the Administrative Review Law) (735 ILCS 5/3—101 *et seq.* (West 1998)) in the circuit court of Madison County. On Vuagniaux's motion, the circuit court subsequently consolidated that action with Vuagniaux's suit for declaratory and injunctive relief and allowed Vuagniaux to make various amendments to his complaint for declaratory and injunctive relief. Following those amendments, the Department moved for summary judgment against Vuagniaux on his suit for a declaratory judgment and injunction. As grounds for its motion, the Department argued that where, as here, the Administrative Review Law is applicable and provides a remedy, the circuit court may not redress a party's grievance through

any other type of action. The circuit court found this argument to be meritorious, granted the Department's motion for summary judgment, and dismissed Vuagniaux's complaint for declaratory and injunctive relief with prejudice.

The proceedings for administrative review remained pending. Vuagniaux was allowed to amend his complaint for administrative review to include a number of different claims, including claims he had previously asserted in his action for declaratory and injunctive relief. Following a hearing, the circuit court entered an order setting aside the Department's decision and dismissing the Department's complaint against Vuagniaux. The court gave numerous reasons for reaching that decision. Among these were that appointment of Dr. Pope to replace Dr. Cook on the Medical Disciplinary Board was not authorized by law and was unconstitutional, that the statutory composition of the Board violates due process and equal protection, that the Department's administrative complaint was defective, that the Department had failed to properly prove its case against Vuagniaux, and that the provisions of the Medical Practice Act regulating advertising are unconstitutionally vague and violate "Vuagniaux's right to engage in free commercial and educational speech." This appeal by the Department followed.

The Department took its appeal directly to us based on the circuit court's determination that provisions of the Medical Practice Act were invalid. See 134 Ill. 2d R. 302(a). Although the constitutionality of those provisions has been the focus of the parties' arguments in our court, a fundamental principle of judicial decisionmaking is that questions regarding the constitutionality of statutes should be considered "only where essential to the disposition of a case, *i.e.*, where the case cannot be determined on other grounds." *Bonaguro v. County Officers Electoral Board*, 158 Ill. 2d 391, 396 (1994). Having reviewed the

record and the applicable law, we have concluded that the disciplinary action undertaken by the Department in this case suffered from a basic flaw which rendered its decision invalid for reasons wholly unrelated to the constitutionality of the Medical Practice Act.

The problem with the proceedings is that the Medical Disciplinary Board, the administrative body charged with enforcing the provisions of the Act pertaining to discipline, was not properly constituted when it considered Vuagniaux's case on the merits and recommended that his license be disciplined. It was improperly constituted because it included Pope, the chiropractor appointed by the Board to replace Cook after Cook was excluded from further participation in the case by the administrative law judge. As Vuagniaux has consistently argued, and as the circuit court correctly determined, Pope's appointment was impermissible because the Board had no statutory or constitutional authority to make it.

The Medical Practice Act plainly provides that all members of the Medical Disciplinary Board are "to be appointed by the Governor by and with the advice and consent of the Senate." 225 ILCS 60/7(A) (West 1998). There is no situation under the Act where anyone other than the Governor, by and with the advice and consent of the Senate, may appoint a person to be a member of the Board. Upon expiration of the Board members' terms, their successors must be appointed by the Governor by and with the consent of the Senate. If a vacancy occurs before the expiration of a Board member's term, it is the Governor, by and with the advice and consent of the Senate, who is authorized to fill the vacancy. 225 ILCS 60/7(B) (West 1998).

There are two circumstances in which the Governor can take action with regard to Board members without involving the Senate. The first is where the Board has recommended that a member be removed for misfeasance,

malfeasance, or wilful neglect of duty. In such a case, the Governor may remove the offending member on his own, after notice and a public hearing, unless the member expressly waives the right to such notice and hearing in writing. 225 ILCS 60/7(B) (West 1998). The second is where a vacancy occurs while the Senate is in recess. There, the basic constitutional provisions governing recess appointments apply and the Governor is authorized to "make a temporary appointment until the next meeting of the Senate, when he shall make a nomination to fill such office." Ill. Const. 1970, art. V, § 9.

While participation by the Senate is unnecessary in the foregoing situations, participation by the Governor is always required. Neither the Medical Practice Act nor the Illinois Constitution of 1970 permit appointment or involuntary removal of Board members without gubernatorial action. As an administrative agency, the Medical Disciplinary Board is and was constrained by these limitations. It has no general or common law authority. The only powers it possesses are those granted to it by the legislature, and any action it takes must be authorized by statute. *Business & Professional People for the Public Interest v. Illinois Commerce Comm'n*, 136 Ill. 2d 192, 243-44 (1989).

Because the Board had no authority to appoint Pope, it was not lawfully constituted at the time it recommended that Vuagniaux be reprimanded and fined. The Department's decision, which was based on the Board's recommendation, is therefore invalid and cannot be given effect. See *Gilchrist v. Human Rights Comm'n*, 312 Ill. App. 3d 597, 603 (2000).

Unlike the administrative body whose decision was challenged in *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160 (2002), the Department makes no claim that its decision can be legitimized on the grounds that Pope was a *de facto* officer. Under the *de facto* officer doctrine, a

person actually performing the duties of an office under color of title is considered to be an officer *de facto*, and his acts as such an officer are valid so far as the public or third parties who have an interest in them are concerned. *People ex rel. Chillicothe Township v. Board of Review*, 19 Ill. 2d 424, 426 (1960). Pursuant to the doctrine, litigants may not assert collateral challenges to the officer's qualifications to hold office as a means of contesting the legality of the officer's acts. *Daniels v. Industrial Comm'n*, 201 Ill. 2d at 174 (McMorrow, J., specially concurring, joined by Freeman, J.).

The case before us does not involve the effects of an officer's acts on a member of the public or a third party, and the officer's qualifications to act are not being contested in a collateral proceeding. The challenge to Pope's authority to act as a member of the Board was raised in the proceeding in which Pope was appointed, at the time the appointment was made, by a doctor whose case was directly affected by the appointment, to the tribunal responsible for considering the disciplinary charges against the doctor, and before the tribunal considered the doctor's case on the merits or made its recommendations. The *de facto* officer doctrine is therefore inapplicable.

In attempting to justify Pope's appointment, the Department does not dispute that the Medical Practice Act contains no provisions authorizing its actions. It argues, however, that the Board has implicit authority to make temporary appointments for a particular case where a permanent Board member is excluded from participating or voluntarily recuses himself. This argument is untenable. As discussed earlier in this opinion, administrative bodies such as the Board are creatures of statute and possess no general or common law powers. Any power or authority claimed by an administrative agency must find its source within the provisions of the

statute by which the agency was created. The agency's authority must either arise from the express language of the statute or "devolve by fair implication and intendment from the express provisions of the [statute] as an incident to achieving the objectives for which the [agency] was created." *Schalz v. McHenry County Sheriff's Department Merit Comm'n*, 113 Ill. 2d 198, 202-03 (1986).

There being no explicit statutory authorization for the Board to appoint replacement members when one of its existing members cannot hear a case, the appointment of Pope can be upheld under the foregoing standard only if authority for such an appointment can fairly be implied from the express provisions of the Medical Practice Act as an incident to achieving the objectives for which the Board was created. In our view, no such implication can be made.

By statute, only four of the Board's seven voting members are needed for a quorum, and vacancies in the membership of the Board "shall not impair the right of a quorum to exercise all the rights and perform all the duties of the *** Board." 225 ILCS 60/7(E) (West 1998). If the Board may continue to conduct its work with a vacancy, it may surely continue its work where, as here, a particular Board member is for some reason unable to participate in a particular matter. Its power to function is no more impeded than ours is when one of our members is unable to take part in the consideration and disposition of a case. Just as the absence of one of our members due to disqualification or recusal does not entitle us to bypass the normal judicial selection mechanism and invite another judge from another court to join us temporarily, the removal of a Board member from participation in a specific disciplinary action does not empower the remaining Board members to sidestep the statutory nomination and confirmation process and invite

another doctor to join them as a substitute. We therefore do not believe that the power to appoint temporary Board members can fairly be implied from the Medical Practice Act as an incident to achieving the Board's statutory purposes.

Having concluded that Pope's appointment exceeded the Board's statutory and constitutional authority and that the decision of the Department based on the recommendation of the improperly constituted Board cannot stand, we agree with the circuit court that the Department's decision to fine Vuagniaux and reprimand his license must be set aside. Unlike the circuit court, however, we believe that the appropriate remedy in this case is to remand the matter to the Department for reconsideration by a legally constituted Board. See *Daniels v. Industrial Comm'n*, 201 Ill. 2d 160 (2002); *Gilchrist v. Human Rights Comm'n*, 312 Ill. App. 3d 597 (2000) (causes remanded to administrative agencies for new hearings when original agency decisions were found to have been made by or with the participation of public officers whose appointments were not authorized by statute).

In ordering a remand for further proceedings by the Department, we hasten to add that the unauthorized appointment of Pope does not render the entire disciplinary proceeding a nullity. It merely invalidates the actions taken by the Department following Pope's appointment to the Board. Because the Board's initial decision to pursue charges against Vuagniaux preceded Pope's participation on the Board, it is unaffected. Because the evidentiary hearings regarding those charges followed Pope's appointment, however, they are invalid and are to be disregarded. If the Department still wishes to pursue disciplinary charges against Vuagniaux, it must afford him the opportunity for a new set of hearings.

Our decision to afford Vuagniaux such relief elimi-

nates the need for us to address issues regarding the sufficiency of the evidence presented by the Department in the original proceedings or the procedural rulings made there. It also renders premature consideration of whether the advertising provisions of the Medical Practice Act violate rights to free speech guaranteed by the first amendment to the United States Constitution (U.S. Const., amend. I) and corresponding protections under the Constitution of Illinois.

Whether governmental restrictions on advertising by medical professionals contravene the first amendment is judged by the standards governing commercial speech. See *Desnick v. Department of Professional Regulation*, 171 Ill. 2d 510 (1996); *Snell v. Department of Professional Regulation*, 318 Ill. App. 3d 972 (2001). Restrictions on commercial speech are analyzed under the test set forth in *Central Hudson Gas & Electric Corp. v. Public Service Comm'n*, 447 U.S. 557, 566, 65 L. Ed. 2d 341, 351, 100 S. Ct. 2343, 2351 (1980). A court first asks whether the commercial speech concerns unlawful activity or is misleading. If the answer to that question is in the affirmative, the speech is not protected by the first amendment. If the answer is in the negative, that is, if the speech concerns lawful activity and is not misleading, the court next asks whether the asserted governmental interest in regulating the speech is substantial. If the interest is substantial, the court must determine whether the regulation directly advances the governmental interest asserted. The court must also assess whether the regulation is more extensive than necessary to serve the governmental interest. *Thompson v. Western States Medical Center*, 535 U.S. 357, 367, 152 L. Ed. 2d 563, 573, 122 S. Ct. 1497, 1504 (2002).

When analyzing challenges to a regulation's constitutionality based on the first amendment, courts differentiate between an as-applied challenge and an overbreadth

challenge. An as-applied challenge asserts that the particular acts which gave rise to the litigation fall outside what a properly drawn regulation could cover. An overbreadth challenge, on the other hand, attacks a regulation's facial validity, enabling persons to whom a statute may constitutionally be applied to challenge the statute on the ground that it may conceivably be applied unconstitutionally to others in situations not before the court. *Desnick v. Department of Professional Regulation*, 171 Ill. 2d at 519-20.

The overbreadth challenge is not available to plaintiffs contesting the validity of a statute regulating commercial speech. *Board of Trustees of the State University of New York v. Fox*, 492 U.S. 469, 106 L. Ed. 2d 388, 109 S. Ct. 3028 (1989). That is so because commercial speech is considered "more hardy, less likely to be 'chilled,' and not in need of surrogate litigators." *Board of Trustees of the State University of New York*, 492 U.S. at 481, 106 L. Ed. 2d at 404, 109 S. Ct. at 3035. Accordingly, any party challenging the constitutionality of a restriction on commercial speech must normally demonstrate his standing by first showing that his particular conduct is protected under the first amendment. *Desnick v. Department of Professional Regulation*, 171 Ill. 2d at 520.

Such a showing necessarily requires a developed factual record. No such record can be said to exist here. Having been generated following the Board's unlawful appointment of Pope, the present record and findings of fact are a nullity. Before the Department can discipline Vuagniaux, new hearings must conducted, and the matter must be taken up again, this time by a lawfully constituted Board. Until that occurs and valid findings of fact are issued, we have no basis for evaluating whether enforcement of the advertising provisions against Vuagniaux would violate his rights to free speech.

In addition to challenging the advertising provisions

under the first amendment, Vuagniaux asserts that they are unconstitutionally vague. The vagueness arguments Vuagniaux raises appear to turn, in large part, on the particular facts of this case. To that extent, their resolution must await new hearings on remand, just as with his first amendment challenges. We note, however, that Vuagniaux also purports to advance a facial challenge to the advertising provisions.

Statutes regulating commercial speech are subject to attack on the grounds that they are unconstitutional on their face, not simply as applied, where the constitutional challenge is based on vagueness. *Jacobs v. Florida Bar*, 50 F.3d 901, 907 (11th Cir. 1995); see, *e.g.*, *Posadas de Puerto Rico Associates v. Tourism Co. of Puerto Rico*, 478 U.S. 328, 92 L. Ed. 2d 266, 106 S. Ct. 2968 (1986). The vagueness doctrine is founded on considerations of due process. As a matter of due process, a law is void if it is so vague that persons " 'of common intelligence must necessarily guess at its meaning and differ as to its application.' " *Ardt v. Illinois Department of Professional Regulation*, 154 Ill. 2d 138, 157 (1992), quoting *Connally v. General Construction Co.*, 269 U.S. 385, 391, 70 L. Ed. 322, 328, 46 S. Ct. 126, 127 (1926).

In *Ardt v. Illinois Department of Professional Regulation*, 154 Ill. 2d 138, this court considered the void for vagueness doctrine in a disciplinary action brought against a dentist for violation of the advertising provisions of the Dental Practice Act. We held there that a statute does not violate the due process clauses of the United States or Illinois Constitution on grounds of vagueness if it is explicit enough to serve as a guide to those who must comply with it. Because we concluded that the advertising provisions at issue in the case and the regulations promulgated in connection with them provided dentists sufficient guidance to enable them to avoid advertising prohibited information, we found that

the challenged provisions were not unconstitutionally vague. *Ardt v. Illinois Department of Professional Regulation*, 154 Ill. 2d at 157.

The portion of the advertising provisions attacked by Vuagniaux as facially invalid under the void-for-vagueness doctrine in this case is section 26(b) of the Medical Practice Act, which permits doctors to include in their advertising information pertaining to their "areas of specialization, including appropriate board certification or limitation of professional practice." 225 ILCS 60/26(b) (West 1998). Vuagniaux takes issue with this statute because it does not define the phrase "appropriate board certification" or include a list of certifications considered to be appropriate. Although the circuit court was persuaded by Vuagniaux's argument, its decision enjoys no deference on appeal. We consider *de novo* whether a statute is constitutional. In undertaking our review, we presume that statutory enactments are constitutional. The burden is on the party challenging the statute to clearly establish any constitutional invalidity. The burden is a formidable one, and this court will uphold a statute's validity whenever it is reasonably possible to do so. *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 123 (1998).

Due process does not mandate absolute standards or mathematical precision in the formulation of statutory enactments. Although it does require that a regulation not be vague, indefinite or uncertain, the doctrine recognizes that different situations require different levels of specificity. A regulation need not be more specific than is possible under the circumstances. *People v. Izzo*, 195 Ill. 2d 109, 114 (2001).

Section 26(b) of the Medical Practice Act, the provision challenged by Vuagniaux as vague, pertains to physicians. "Board certification" is a standard and widely used term in the practice of medicine. For a physician to be

"board certified" is commonly understood to mean that he has passed an examination administered by a medical specialty board, has fulfilled all requirements of that board for certification as a specialist, and has been certified by the board as a specialist. See 1 Schmidt, Attorneys' Dictionary of Medicine 12 (Cum. Supp. 2002). Section 26(b)'s use of the word "appropriate" in connection with "board certification" does not add any ambiguity to the term. Section 26(b) pertains to advertising of the physician's area of specialization. When the statute says that a physician may include "appropriate board certification" in his ads, it means simply that he may make mention of whatever board certification he has received that is relevant to the particular area of specialization he is advertising.

The Medical Practice Act governs different types of physicians engaged in a spectrum of specialties whose standards are administered by a variety of different medical boards. The statute's generic reference to board certifications without specifying each particular board or each particular type of certification is a reflection of this situation. Enumeration of every possible board certification would be cumbersome. It could also prove unduly restrictive, preventing doctors in new or emerging specialties from advertising legitimate board certifications that had not yet made it onto the officially prescribed list.

We note, moreover, that there is nothing to indicate that the present statutory and regulatory scheme is proving difficult to follow or administer. To our knowledge, the only physician to have run afoul of the advertising provision on "board certification" is Vuagniaux. Considering that the "brain stem specialist" certification Vuagniaux claimed in his ads was not bestowed by any medical board, but came instead from the educational institution where Vuagniaux learned the technique, it is

difficult for us to see how he could reasonably have been misled into the thinking that his certification qualified as an "appropriate board certification" under the statute. A definitive answer as to whether the provision was vague as applied to him must, of course, await the new proceedings following remand. At this point, however, it is clear that Vuagniaux cannot meet his burden of showing that the statute is void for vagueness on its face.

The circuit court's judgment presents two additional questions whose resolution remains necessary in light of our decision to remand for further proceedings. The first concerns disposition of a motion to dismiss filed by Vuagniaux during the disciplinary action. The circuit court concluded that counts II and III of the Department's complaint were insufficient as a matter of law and that Vuagniaux's motion for judgment on the pleadings or to dismiss should have been granted at the administrative level because those counts "did not set forth facts informing [Vuagniaux] wherein his ads violated the applicable law."

We cannot sustain that ruling. Administrative complaints are not required to state the charges with the same precision, refinements, or subtleties as pleadings in a judicial proceeding. *Abrahamson v. Illinois Department of Professional Regulation*, 153 Ill. 2d 76, 93 (1992). Section 10—25(a)(4) of the Illinois Administrative Procedure Act (5 ILCS 100/10—25(a)(4) (West 1998)), which is adopted by and incorporated into the Medical Practice Act (225 ILCS 60/47 (West 1998)), provides that "[e]xcept where a more detailed statement is otherwise provided for by law," the notice served on a party in a contested case shall include "a short and plain statement of the matters asserted, the consequences of a failure to respond, and the official file or other reference number." 5 ILCS 100/10—25(a)(4) (West 1998). No additional specificity is mandated by the Medical Practice Act itself.

It requires simply that the Department notify the accused doctor in writing of the charges made and the time and place where the hearing on the charges will be conducted, that it direct the doctor to file his written answer to the charges under oath within a specified time, and that it advise the doctor that if he fails to file such an answer, a default will be taken against him and his license will be subject to such disciplinary action as the Department may deem proper. 225 ILCS 60/36 (West 1998).

In applying these provisions, the courts have held that charges filed before an administrative agency "need only be drawn sufficiently so that the alleged wrongdoer is reasonably apprised of the case against him to intelligently prepare his defense." See *Siddiqui v. Department of Professional Regulation*, 307 Ill. App. 3d 753, 757 (1999). The complaint filed against Vuagniaux met that standard. It specifically identified the allegedly improper advertisements, identified where and when they were published, set forth the statutory provisions they were alleged to have violated, and described why they were claimed to be in violation of the law. These allegations provided Vuagniaux with ample notice of the nature of the charges against him. If Vuagniaux was in any way impaired in his ability to defend himself, it is not apparent in the materials we have before us. The complaint is therefore not subject to dismissal on the pleadings.

The final aspect of the circuit court's judgment we must address before the matter is remanded is its determination that the disciplinary mechanism established by the Medical Practice Act violates constitutional rights to due process and equal protection because it subjects physicians who are chiropractors to discipline by physicians who are not chiropractors. According to Vuagniaux, only chiropractors should be permitted to stand in judgment of other chiropractors. Because the Medical

Practice Act calls for the Disciplinary Board to include only one chiropractor among its seven voting members (see 225 ILCS 60/7(A) (West 1998)), Vuagniaux contends that the law is inherently flawed and that the Board, as constituted under the law, should not be permitted to take disciplinary action against him.

In challenging the statutory composition of the Disciplinary Board, Vuagniaux asserts no first amendment claims. The infringement claimed is on his ability to pursue his profession, not his freedom of speech. Legislation infringing on the right to pursue a profession is examined under the rational basis test. *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d 322, 330 (1989).

Rational basis review is limited and " 'highly deferential.' " *Arangold Corp. v. Zehnder*, 204 Ill. 2d 142, 147 (2003), quoting *Committee for Educational Rights v. Edgar*, 174 Ill. 2d 1, 33 (1996). Under the rational basis test, a statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor discriminatory. *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d at 330.

Vuagniaux assails the composition of the Disciplinary Board on the grounds that it prevents chiropractors from being judged by their peers and subjects them to discipline by doctors who do not understand their work and are prejudiced against them. We disagree. While chiropractors may once have been ostracized by certain segments of the medical community, the Medical Practice Act treats them as full and equal members of the medical profession. Under the law, those holding the degree of doctor of chiropractic possess precisely the same professional stature as those holding degrees as doctors of medicine or doctors of osteopathy. All are regarded as physicians. Although more of the physicians on the

Disciplinary Board are doctors of medicine, the record in this case indicates that the apportionment of membership on the Disciplinary Board was intended to reflect the relative number of each type of physician practicing in the state. Medical doctors outnumber chiropractors on the Board simply because medical doctors outnumber chiropractors in the profession. It is a matter of proportional representation, not antichiropractic prejudice.

The physicians on the Disciplinary Board who are doctors of medicine may not be conversant with the methods and practices employed by physicians who are doctors of chiropractic. Likewise, physicians who are chiropractors will not normally be knowledgeable about the methods and practices employed by physicians who are doctors of medicine. The law understands this, just as it understands that practitioners in one speciality of medicine or chiropractic may know little of the work of practitioners in another specialty. That is why it does not restrict members of the Disciplinary Board to reliance on their personal training and experience in judging fellow physicians. Under the Medical Practice Act and the regulations enacted in accordance with that Act, provision is made for full hearings in contested cases where experts in the relevant field can testify, as they were called to testify in this case. Through relevant expert testimony, Board members can obtain the specialized knowledge needed to assess a particular case, just as jurors are educated and guided by expert testimony in complex civil and criminal matters.

Under these circumstances, we believe that the legislature had a rational basis for structuring the Disciplinary Board the way it did and that the composition of the Board is neither arbitrary nor discriminatory. While Vuagniaux asserts that the disciplinary system would work better and achieve superior results if only medical doctors could consider charges against medical

doctors and only chiropractors could consider charges against chiropractors, his arguments are purely theoretical. They also present their own set of problems. For example, if disciplinary action against a physician could only be conducted by other physicians with his same training and background, as Vuagniaux urges, one might be required to similarly conclude that specialists within each of the basic physician groups could only be subject to discipline by physicians who practiced the same specialty. If that were so, numerous additional disciplinary boards would be necessary to accommodate all the different specialties. Bureaucracy would proliferate.

Regardless of the relative merits of the system proposed by Vuagniaux, however, such considerations are of no consequence in evaluating the law in its present form. The legislature is presumed to have investigated the question and ascertained what is best for the good of the medical profession and for the good of the people among whom medical professionals practice. Whether the course chosen by the legislature is wise or whether it is the best means to achieve the desired result is not a proper subject of judicial inquiry. It is for the legislature, and not the courts, to balance the advantages and disadvantages of the law's requirements. *Potts v. Illinois Department of Registration & Education*, 128 Ill. 2d at 333.

For the foregoing reasons, the judgment of the circuit court is affirmed in part and reversed in part, and the cause is remanded to the Department for further proceedings consistent with this opinion.

*Affirmed in part and reversed in part;*
*cause remanded.*

CHIEF JUSTICE McMORROW, dissenting:

Although neither party has raised the issue, this court has an obligation to consider, *sua sponte*, its jurisdiction over the present appeal. See, *e.g.*, *People v.*

*Fuller*, 187 Ill. 2d 1, 7 (1999). Because I conclude that we do not have jurisdiction under *Trent v. Winningham*, 172 Ill. 2d 420 (1996), and *Hearne v. Illinois State Board of Education*, 185 Ill. 2d 443 (1999), I respectfully dissent.

In *Trent*, the plaintiff, Barbara Trent, sought retroactive child support from the father of her child under section 14(b) of the Illinois Parentage Act of 1984 (750 ILCS 45/14(b) (West 1992)). The trial court denied Trent's claim for support, holding that she was not entitled to the support, that the claim was time-barred and, in the alternative, that section 14(b) was unconstitutional. *Trent*, 172 Ill. 2d at 422. Trent appealed to this court, asserting that a direct appeal was appropriate under Supreme Court Rule 302(a) (134 Ill. 2d R. 302(a)) because section 14(b) had been held unconstitutional.

This court did not reach the merits of Trent's claim for support. Instead, after examining our jurisdiction *sua sponte*, we concluded that the circuit court's constitutional ruling could not serve as a basis for direct review under Rule 302(a) because the circuit court had also denied the plaintiff relief on alternative, nonconstitutional grounds. In so holding, we noted that when a judgment of the circuit court is based upon a finding that legislation is unconstitutional, Rule 302(a) mandates the parties to bypass the normal appellate process and proceed directly to this court. We explained that this direct review process becomes problematic when the judgment of the circuit court contains alternative, nonconstitutional grounds, as this court is then compelled to consider issues it might otherwise decline to address "in deference to our appellate court where the issues would have been reviewable as a matter of right." *Trent*, 172 Ill. 2d at 426. We also noted that when a circuit court holds legislation unconstitutional, the stability of the legal system is undermined. We admonished courts "not to compromise that stability in the first place by declar-

ing legislation unconstitutional when the particular case does not require it," *i.e.*, when alternative, nonconstitutional grounds can resolve the case. *Trent*, 172 Ill. 2d at 425.

Because the circuit court in *Trent* had denied plaintiff relief on two, nonconstitutional grounds, the constitutional holding was not necessary for the resolution of the case. Based on the concerns noted above, we concluded that Rule 302(a) jurisdiction was improper. *Trent*, 172 Ill. 2d at 426. We vacated the circuit court's order and remanded the cause to the circuit court with instructions to enter a new, modified order, without the holding that section 14(b) was unconstitutional. *Trent*, 172 Ill. 2d at 427.

Our decision in *Trent* was reaffirmed in *Hearne*. In *Hearne*, a Chicago schoolteacher who had been dismissed by the board of education filed suit in the circuit court contesting his dismissal. Upon administrative review, the circuit court set aside the dismissal, finding that the weight of the evidence supported reinstatement. *Hearne*, 185 Ill. 2d at 451. However, the court also held a portion of the Illinois School Code unconstitutional and ordered the teacher reinstated on this alternative basis as well. *Hearne*, 185 Ill. 2d at 451-52. The school board filed a motion to reconsider in which it argued that, under *Trent*, the circuit court should not have reached the constitutional claim. *Hearne*, 185 Ill. 2d at 452. The circuit court denied the motion, stating that it was appropriate to reach the constitutional question in order to correct a "fundamentally unfair" process created by the legislation and to relieve other courts from the burden of having to interpret a "vague and ambiguous statute." *Hearne*, 185 Ill. 2d at 452. Based on the finding of unconstitutionality, direct appeal was sought in this court under Rule 302(a).

Applying our holding in *Trent*, we concluded that the

circuit court's constitutional ruling did not provide a proper basis for direct review. We expressly rejected the circuit court's rationale for reaching the constitutional issue, noting that the circuit court's constitutional ruling granted the teacher "additional and alternative relief" which was "not necessary to resolve plaintiff's claim for administrative review." *Hearne*, 185 Ill. 2d at 456. As in *Trent*, we remanded the cause to the circuit court with instructions to vacate its order. We further instructed the circuit court to reenter a modified order which excluded the holding that a portion of the School Code was unconstitutional. *Hearne*, 185 Ill. 2d at 457. See also *McLean v. Department of Revenue*, 184 Ill. 2d 341, 351 (1998) (the rationale of *Trent* did not apply where the finding of statutory unconstitutionality was *not* an alternative basis for granting or denying relief).

The present case is controlled by *Trent* and *Hearne*. Here, the circuit court granted complete relief to Vuagniaux on several nonconstitutional grounds. The circuit court held that the decision of the Department had to be set aside because, among other reasons, the appointment of Dr. Pope to replace Dr. Cook on the Medical Disciplinary Board was not authorized by the Medical Practice Act (225 ILCS 60/7 (West 1998)), the Department's administrative complaint was defective, and the Department had failed to prove its case by clear and convincing evidence. However, the circuit court also held, in the alternative, that the decision of the Department had to be set aside because sections 22(A)(13) and (A)(26) of the Medical Practice Act (225 ILCS 60/22(A)(13), (A)(26) (West 1998)) were unconstitutionally vague and violated Vuagniaux's right to engage in "free commercial and educational speech," and because section 7 of the Medical Practice Act (225 ILCS 60/7 (West 1998)), which sets forth the composition of the Medical Disciplinary Board, violated Vuagniaux's rights to due process and equal protection.

As in *Hearne*, the circuit court in this case granted Vuagniaux "alternative relief" (*Hearne*, 185 Ill. 2d at 456) based on its holdings that provisions of the Medical Practice Act were unconstitutional, even though none of these holdings were necessary for the circuit court's disposition of the case. Accordingly, under *Hearne* and *Trent*, the proper resolution of this case is to vacate the circuit court's order and to remand the cause to the circuit court with instructions to enter a new order which excludes the holdings of unconstitutionality. See *Hearne*, 185 Ill. 2d at 457; *Trent*, 172 Ill. 2d at 427.

I believe that *Hearne* and *Trent* are relevant to the present case. Because the majority does not acknowledge either decision or explain why the principles set forth in those decisions are inapplicable, I respectfully dissent.

JUSTICES FREEMAN and GARMAN join in this dissent.