# ILLINOIS OFFICIAL REPORTS

## Appellate Court

***Shachter v. City of Chicago***, 2011 IL App (1st) 103582

| | |
|---|---|
| Appellate Court Caption | JAY F. SHACHTER, Plaintiff-Appellant, v. THE CITY OF CHICAGO, a Municipal Corporation, THE DEPARTMENT OF ADMINISTRATIVE HEARINGS, and THE DEPARTMENT OF STREETS and SANITATION, Defendants-Appellees. |
| District & No. | First District, First Division<br>Docket No. 1-10-3582 |
| Filed | December 5, 2011 |
| Rehearing denied | January 5, 2012 |
| Held<br><br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The trial court properly affirmed administrative findings that plaintiff violated ordinances involving the care of his property and the parkway outside his home and rejected plaintiff's arguments that his petition for substitution of judge should have been granted, that the administrative law officer's findings were against the manifest weight of the evidence, and that the city's weed and parkway ordinances were unconstitutional. |
| Decision Under Review | Appeal from the Circuit Court of Cook County, No. 09-M1-450812; the Hon. William G. Pileggi, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on
Appeal

Jay F. Shachter, of Chicago, appellant *pro se*.

Mara S. Georges, Corporation Counsel, of Chicago (Benna Ruth Solomon, Myriam Zreczny Kasper, Stephen R. Patton, and Suzanne M. Loose, Assistant Corporation Counsel, of counsel), for appellees.

Panel

JUSTICE ROCHFORD delivered the judgment of the court, with opinion.
Justices Hall and Karnezis concurred in the judgment and opinion.

**OPINION**

¶ 1    This appeal arises out of an administrative proceeding in which plaintiff-appellant, Jay F. Shachter, was found to have violated two municipal ordinances involving the care of his property and the parkway outside his home. Plaintiff thereafter filed a complaint in the circuit court for administrative review and declaratory judgment against defendants-appellees, The City of Chicago, a municipal corporation (the city), the department of administrative hearings, and the department of streets and sanitation. In that complaint, plaintiff asserted a number of procedural and substantive challenges to the administrative proceedings, as well as constitutional challenges to the two municipal ordinances he was found to have violated. After having quashed plaintiff's subpoenas, denied plaintiff's request to present additional evidence, and denied a motion for substitution of judge, the circuit court affirmed the administrative findings and rejected plaintiff's constitutional challenges.

¶ 2    On appeal, plaintiff raises a number of challenges to both the administrative and circuit court proceedings, and also continues to press his constitutional challenges to the ordinances themselves. For the reasons that follow, we affirm.

¶ 3                                    I. BACKGROUND

¶ 4    On October 23, 2009, an officer of the city's department of streets and sanitation completed a written "ADMINISTRATIVE NOTICE OF ORDINANCE VIOLATION." That notice of violation asserted that conditions on or near property plaintiff owned on the northwest side of Chicago caused him to be in violation of two provisions of the Chicago Municipal Code (municipal code). Specifically, the notice alleged that weeds on plaintiff's property were over 10 inches tall and that plaintiff had failed to maintain the parkway in front of his property. These conditions were alleged to be in violation, respectively, of sections 7-28-120(a) and 10-32-050 of the city's municipal code. Chicago Municipal Code § 7-28-120(a) (amended Dec. 4, 2002) (weed ordinance), § 10-32-050 (amended July 10, 2002)

(parkway ordinance). Finally, the notice indicated that an administrative hearing on these violations had been scheduled for November 24, 2009. This notice of violation was mailed to plaintiff on November 2, 2009.

¶ 5    The hearing was held as scheduled before an administrative law officer (ALO) sitting in the city's department of administrative hearings, environmental safety hearings division. Plaintiff appeared and was sworn in as a witness. The ALO thereafter recited the two violations as specified on the notice of violation, stated that the officer who had completed the notice of violation had also taken pictures of plaintiff's property and the parkway in front of plaintiff's property, and indicated that these photos had been provided to the ALO with attached descriptions. The ALO then stated that these photos and the officer's descriptions indicated that plaintiff's property and the parkway in front of his property contained overgrown weeds and grass, this situation was "attracting rodents," and that plaintiff was a "repeat offender." The ALO then entered the photos into the record, found that the city had stated a cause of action for the alleged violations, and asked plaintiff: "What's your defense? Tell me why this is not a violation."

¶ 6    Plaintiff stated that he had a written motion to dismiss, which the ALO indicated he was not authorized to hear. This written motion is not contained in the record on appeal. Nevertheless, after plaintiff stated he did not want to waive any challenge he might later raise in the circuit court, he was allowed to read his motion into the record. The transcript indicates that plaintiff's motion asserted that the city had failed to provide him with proper notice of the administrative hearing because the name of the officer completing the notice of violation was not included on that document. The ALO denied this motion on the grounds that he was not authorized to hear such prehearing motions to dismiss.

¶ 7    Plaintiff then asked to see the "original complaint" filed in this case. The ALO indicated that this request was not relevant in light of the fact that he had already found that the city's written notice of violation and the photos, taken together, had stated a cause of action. The ALO then indicated that plaintiff could further pursue this issue before the circuit court.

¶ 8    Plaintiff thereafter presented a written request for a subpoena compelling the appearance and testimony of the officer who issued the notice of violation. The written motion was entered into the record and plaintiff was given an opportunity to support that motion with oral argument. In both the written motion and oral argument, plaintiff generally asserted that because what was or was not a "weed" was "inherently ambiguous and subjective," and because he had a right to cross-examine witnesses pursuant to section 1-2.1-5(c) of the Illinois Municipal Code (65 ILCS 5/1-2.1-5(c) (West 2008)), "there is no other way the City's case can be made other than by having the person who took those photographs come in here and identity for your sake as well as for mine which of those plants he considers to be the weeds and which he does not." The ALO denied this motion as well, finding a decision could be made upon the evidence already presented.

¶ 9    Plaintiff then made a number of substantive and constitutional arguments with respect to the alleged violation of the city's weed ordinance. Substantively, plaintiff argued that the weed ordinance did not specifically define what a weed actually was. Citing to dictionary definitions defining a weed as a plant "growing where you don't want it," plaintiff argued

that "[a]ll of the plants on my land are growing exactly where I want them." He also testified that his land was well tended, it was "the best tended land on [his] block," he tended the parkway as well, and other properties in the area were strewn with rubbish.

¶ 10	With respect to his constitutional arguments, plaintiff first argued that the weed ordinance was "fatally unspecific because it does not give the citizenry notice of what is and what is not prohibited." Specifically, plaintiff argued that the ordinance did not "specify what a weed is." Plaintiff then argued that the ordinance did not bear a rational relationship to any legitimate public purpose because: (1) the plants on his property were not noxious; and (2) nothing about the condition of his property contributed to any rodent problem. Plaintiff also argued that because the "right to property is a fundamental right guaranteed by the Illinois Constitution it must–the ordinance must not only satisfy the rational relationship test but it must also satisfy the strict scrutiny test." Plaintiff finally argued that the ordinance had been arbitrarily enforced and that it also invited arbitrary enforcement.

¶ 11	Following plaintiff's argument, the ALO found that the alleged violations had been proven by a preponderance of the evidence and imposed a total of $300 in fines and $40 in administrative costs. Plaintiff's request to stay enforcement of this order was denied.

¶ 12	The following day, plaintiff filed a four-count complaint in the circuit court. The first count sought administrative review of the ALO's finding that he had violated the city's weed ordinance. That count included allegations that this ordinance: (1) was vague and subjective; (2) invited arbitrary enforcement; (3) had been arbitrarily enforced; (4) failed the "strict scrutiny" test because it limited the right to property in an overly broad manner; and (5) bore no rational relationship to any legitimate or intended public purpose. Count I also included allegations that: (1) the administrative hearing was conducted without proper notice; (2) plaintiff was denied his right to cross-examination at the hearing; (3) the city's case was improperly presented by an employee of the department of administrative hearings; and (4) the findings of fact at the administrative hearing were against the manifest weight of the evidence and contrary to law. Finally, count I sought reversal of the administrative finding with respect to the weed ordinance or a remand for further proceedings.

¶ 13	The second count of plaintiff's complaint specifically incorporated only the first five allegations discussed above and asked for a declaration that the city's weed ordinance was invalid. The third and fourth counts also sought administrative review and a declaratory judgment, respectively, and asserted nearly identical allegations with regard to the finding that plaintiff had violated the city's parkway ordinance. We do note that these two counts omitted any assertion that the parkway ordinance failed the "strict scrutiny" test or bore no rational relationship to any legitimate or intended public purpose.

¶ 14	In an order entered on February 1, 2010, defendants were granted leave to file their answer *instanter*, and plaintiff was ordered to file a written "specification of the errors relied upon for reversal" pursuant to section 3-108 of the Code of Civil Procedure (Code) (735 ILCS 5/3-108 (West 2008)). That order also granted defendants leave to file a written response to the specification of errors and continued the matter to June 8, 2010. Plaintiff filed his specification of errors on March 18, 2010, and raised many of the same issues and arguments, including the constitutional challenges, that he had raised in the administrative

hearing.[1] Defendants filed their response on April 30, 2010, arguing that the administrative proceedings were proper, the findings of the ALO were supported by the evidence presented, and the ordinances themselves were constitutional.

¶ 15    On May 24, 2010, and June 7, 2010, plaintiff had subpoenas issued seeking to have two Chicago park district employees testify at the June 8, 2010, hearing. At that hearing, an attorney for the park district presented a motion to quash plaintiff's subpoenas, and that motion was supported by the defendants. While the written motion itself does not appear in the record, following oral argument the trial court granted the park district's motion. The trial court's decision was based on its finding that the circuit court was not allowed to hear additional evidence in administrative review cases. The circuit court therefore rejected plaintiff's argument that such an evidentiary limitation should not apply here because he had specifically pleaded in his complaint–in addition to his two counts seeking administrative review–two separate counts seeking a declaratory judgment that the two municipal ordinances involved in the administrative proceeding were unconstitutional.

¶ 16    Despite granting the motions to quash, the circuit court agreed to include language in its order allowing plaintiff to seek an interlocutory appeal pursuant to Supreme Court Rule 308(a). Ill. S. Ct. R. 308(a) (eff. Feb. 26, 2010). The question certified by the circuit court was "whether the Circuit Court may hear new evidence in adjudicating a constitutional challenge." However, the circuit court denied plaintiff's request to stay the proceedings pending resolution of plaintiff's Rule 308 application for leave to appeal and set the matter for a future hearing on September 7, 2010. This court denied plaintiff's application for interlocutory appeal in an order entered on July 27, 2010. While plaintiff's application for leave to appeal was pending in this court, he filed a motion asking the circuit court to reconsider its June 8, 2010, order. That motion was heard at a final hearing held on September 21, 2010.

¶ 17    At that hearing, the circuit court first denied plaintiff's motion to reconsider. In its written order, the circuit court made it clear that plaintiff would not be permitted to introduce any evidence in support of either his administrative review counts or the counts seeking declaratory judgment. The circuit court then addressed a petition, filed by plaintiff on the day of the hearing, requesting a substitution of judge for cause pursuant to section 2-1001(a)(3) of the Code. 735 ILCS 5/2-1001(a)(3) (West 2008). In that petition, plaintiff asserted that the circuit court had been biased by being presented with defendants' written response to his specification of errors. Plaintiff claimed that this written response was not permitted because the circuit court only granted defendants *leave* to file such a response and section 3-108(b) of the Code only allows parties to file additional pleadings where they are "*required* by the court." (Emphasis added.) 735 ILCS 5/3-108(b) (West 2008).

¶ 18    The circuit court denied plaintiff's petition, finding it untimely and unfounded. The

[1]We note that, while counts III and IV of plaintiff's original complaint included a general assertion that the city's parkway ordinance "is, and had consistently been, arbitrarily enforced," that argument was not included in plaintiff's subsequently filed written specification of errors. Moreover, that contention has not been further pursued in either in the circuit court or on appeal.

-5-

circuit court judge also rejected plaintiff's assertion that he had no authority to rule on the petition for substitution and that the petition must rather be heard by a different judge. When the circuit court then asked plaintiff if he was prepared to continue to consideration of the merits of his complaint, plaintiff indicated that he did not believe he could continue to participate in the proceedings without waiving his argument that the petition for substitution of judge should have been heard by a different judge. Plaintiff maintained this position with respect to the circuit court's determination of both the two administrative review counts and the two declaratory judgment counts. After hearing argument from defendants, the circuit court entered an order affirming the administrative decision and finding the two municipal ordinances in question constitutional. Plaintiff now appeals.

¶ 19                                   II. ANALYSIS

¶ 20        On appeal, plaintiff raises a host of procedural, substantive, and constitutional challenges to both the administrative and the circuit court proceedings. He first asserts that the circuit court should not have ruled on the petition to substitute without transferring it to another judge for consideration and that the substitution petition should have been granted on the merits. He then raises a number of challenges to the administrative proceedings and also asserts that the ALO's findings were against the manifest weight of the evidence. Plaintiff's next contention is that the circuit court erred in denying him the opportunity to present evidence in support of his complaint for administrative review and declaratory judgment. Finally, plaintiff reasserts his arguments that the city's weed and parkway ordinances are unconstitutional. We address each of these arguments in turn.

¶ 21                            A. Substitution of Judge

¶ 22        Plaintiff's first contentions on appeal involve his petition for substitution of judge. As noted above, plaintiff asserts that the circuit court erred by not transferring his petition for substitution to another judge for consideration and–even assuming that such a transfer was not required–the circuit court erred by denying that petition on the merits. We review these contentions first–before further addressing plaintiff's other challenges to the administrative and circuit court proceedings–because where a petition for substitution of judge is erroneously denied, "all orders entered subsequent to the denial are null and void." *Chicago Transparent Products, Inc. v. American National Bank & Trust Co. of Chicago*, 337 Ill. App. 3d 931, 945 (2002) (citing *In re Dominique F.*, 145 Ill. 2d 311, 324 (1991)). Our review of a circuit court's ruling on a motion to substitute judge is *de novo*. *Powell v. Dean Foods Co.*, 405 Ill. App. 3d 354, 359 (2010).

¶ 23        Here, plaintiff filed a petition to substitute judge "for cause" pursuant to section 2-1001(a)(3) of the Code, which in relevant part provides:

"(3) Substitution for cause. When cause exists.

(i) Each party shall be entitled to a substitution or substitutions of judge for cause.

(ii) Every application for substitution of judge for cause shall be made by petition, setting forth the specific cause for substitution and praying a substitution of judge. The

petition shall be verified by the affidavit of the applicant.

(iii) Upon the filing of a petition for substitution of judge for cause, a hearing to determine whether the cause exists shall be conducted as soon as possible by a judge other than the judge named in the petition. The judge named in the petition need not testify but may submit an affidavit if the judge wishes. If the petition is allowed, the case shall be assigned to a judge not named in the petition. If the petition is denied, the case shall be assigned back to the judge named in the petition." 735 ILCS 5/2-1001(a)(3) (West 2008).

¶ 24    In construing this section, our supreme court has stated that the provisions of this statute:

"are to be liberally construed to promote rather than defeat the right of substitution, particularly where the 'cause' claimed by the petitioner is that the trial judge is prejudiced against him. [Citations.] The courts have also recognized, however, that a party's right to have a petition for substitution heard by another judge is not automatic. [Citations.] Principles of liberal construction do not excuse the obligation of parties to adhere to express statutory requirements. [Citation.] Trial courts are required to refer a petition to another judge for a hearing on whether cause for substitution exists only if the party seeking that relief is able to bring himself or herself within the provisions of the law. [Citation.]

In order to trigger the right to a hearing before another judge on the question of whether substitution for cause is warranted in a civil case pursuant to section 2-1001(a)(3), the request must be made by petition, the petition must set forth the specific cause for substitution, and the petition must be verified by affidavit. ***

***

To meet the statute's threshold requirements, a petition for substitution must allege grounds that, if true, would justify granting substitution for cause. [Citation.] Where bias or prejudice is invoked as the basis for seeking substitution, it must normally stem from an extrajudicial source, *i.e.*, from a source other than from what the judge learned from her participation in the case before her. A judge's previous rulings almost never constitute a valid basis for a claim of judicial bias or partiality." *In re Estate of Wilson*, 238 Ill. 2d 519, 553-54 (2010).

¶ 25    Indeed, our supreme court has recently reaffirmed that "actual prejudice" must be established in any petition seeking substitution of a judge for cause. *In re Marriage of O'Brien*, 2011 IL 109039, ¶30. It had also been recognized that opinions " 'formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Eychaner v. Gross*, 202 Ill. 2d 228, 281 (2002) (quoting *Liteky v. United States*, 510 U.S. 540, 555 (1994)).

¶ 26    In this case, plaintiff's petition for substitution was premised upon the circuit court's handling of his written specification of errors and defendants' written response thereto. Plaintiff's petition asserted that by *allowing*, but not *requiring*, defendants to file a response to his specification of errors, the circuit court had not properly followed section 3-108(b) of

the Code. 735 ILCS 5/3-108(b) (West 2008).

¶ 27    The petition noted that while section 3-108 of the Code requires a plaintiff seeking administrative review to file a complaint, requires a defendant administrative agency to file an answer consisting of the record of the administrative proceedings, and allows the circuit court to require a plaintiff to file a specification of errors, it further provides: "No pleadings other than as herein enumerated shall be filed by any party unless required by the court." 735 ILCS 5/3-108(a), (b) (West 2008). Plaintiff claimed that defendant's written response to his specification of errors in this case was not permitted because the trial court only granted defendants *leave* to file such a response, and section 3-108(b) of the Code allows parties to file additional pleadings only where they are "*required* by the court." (Emphasis added) 735 ILCS 5/3-108(b) (West 2008). Plaintiff further claims that he was prejudiced by defendant's written response, as the circuit court judge had thus "exposed himself to arguments in support of Defendant's position that the Legislature did not want him to be exposed to."

¶ 28    As an initial matter, we fail to see how plaintiff can possibly establish a violation of section 3-108(b) or any resulting prejudice. While this section clearly limits the ability of the parties to independently file any additional pleadings in administrative review proceedings, it also quite clearly grants the circuit court authority to "require" such pleadings. If a circuit court can compel a party to file additional pleadings, it can certainly grant that party leave to do so. Moreover, we fail to comprehend plaintiff's argument that a party's pleading would be unprejudicial where "required" by the circuit court, but that same pleading somehow prejudices a circuit court judge when filed only after leave to do so is granted.

¶ 29    Moreover, even if we assumed that a violation of section 3-108(b) occurred here, plaintiff's assertions completely fail to present a case of "actual prejudice" sufficient to establish the threshold requirements for a petition to substitute for cause. Plaintiff's petition contained no assertions of any extrajudicial source of bias or prejudice, and as noted above, opinions " 'formed by the judge on the basis of facts introduced or events occurring in the course of the current proceedings, or of prior proceedings, do not constitute a basis for a bias or partiality motion unless they display a deep-seated favoritism or antagonism that would make fair judgment impossible.' " *Eychaner*, 202 Ill. 2d at 281 (quoting *Liteky*, 510 U.S. at 555). We see no such evidence of favoritism or antagonism here. Indeed, plaintiff's petition did not even include any such allegations, but instead relied on the prejudice allegedly inherent in what he views as a technical violation of section 1-308(b) of the Code.

¶ 30    These allegations are insufficient to satisfy even the threshold requirements for a petition seeking substitution of a judge for cause. We therefore find that the circuit court did not err in either refusing to transfer plaintiff's petition to another judge for consideration or in denying the petition on the merits. As such, the orders entered by the circuit court following the denial of this petition, including the final order from which plaintiff appeals, were not rendered null and void.

¶ 31                    B. Administrative Proceedings

¶ 32    Having determined that the final circuit court order from which plaintiff has appealed was validly entered, we may now address plaintiff's assertions regarding the administrative

-8-

proceedings conducted below.

¶ 33                                1. Standard of Review

¶ 34        Pursuant to the Illinois Municipal Code (65 ILCS 5/1-2.1-1 *et seq*. (West 2008)) and the city's municipal code, the final decision entered by the ALO in the administrative proceeding below is subject to judicial review. See 65 ILCS 5/1-2.1-7 (West 2008) ("Any final decision by a code hearing unit that a code violation does or does not exist shall constitute a final determination for purposes of judicial review and shall be subject to review under the Illinois Administrative Review Law."); Chicago Municipal Code § 2-14-102 (added Apr. 2, 1998) (same). The Illinois Administrative Review Law, in turn, provides that judicial review of an administrative decision "shall extend to all questions of law and fact presented by the entire record before the court" and "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct." 735 ILCS 5/3-110 (West 2008). Furthermore, our supreme court has stated:

   "The applicable standard of review–which determines the extent of deference afforded to the administrative agency's decision–depends upon whether the question presented is a question of fact, a question of law, or a mixed question of law and fact. [Citations.] Rulings on questions of fact will be reversed only if against the manifest weight of the evidence. [Citation.] In contrast, questions of law are reviewed *de novo* [citation], and a mixed question of law and fact is reviewed under the clearly erroneous standard [citations]. We further note that, under any standard of review, a plaintiff to an administrative proceeding bears the burden of proof, and relief will be denied if he or she fails to sustain that burden." *Marconi v. Chicago Heights Police Pension Board*, 225 Ill. 2d 497, 532-33 (2006).

Finally, "[i]n administrative cases, our role is to review the decision of the administrative agency, not the determination of the circuit court." *Id*. at 531.

¶ 35                                2. Pleading Requirements

¶ 36        Plaintiff first contends the administrative proceedings against him were void because there is no indication that they were initiated by the filing of a "written pleading." We disagree.

¶ 37        In support of this argument, plaintiff cites to section 1-2.1-4 of the Illinois Municipal Code, which initially provides that a municipality may establish a "system of administrative adjudication" and that any such system "shall provide for a code hearing unit within an existing agency or as a separate agency in the municipal government." 65 ILCS 5/1-2.1-4(a) (West 2008). Of particular relevance here, the Illinois Municipal Code also states that any "proceeding before a code hearing unit shall be instituted upon the filing of a *written pleading* by an authorized official of the municipality." (Emphasis added.) 65 ILCS 5/1-2.1-4(d) (West 2008). On appeal, plaintiff notes that he asked the ALO to see the city's "original complaint" at the administrative proceeding below but was rebuffed. He therefore contends there is no evidence that a written pleading was ever filed, and the administrative proceedings were therefore void because they did not comport with section 1-2.1-4(d) of the

-9-

Illinois Municipal Code.

¶ 38    However, section 1-2-1 of the Illinois Municipal Code provides: "[t]he corporate authorities of each municipality may pass all ordinances and make all rules and regulations proper or necessary, to carry into effect the powers granted to municipalities." 65 ILCS 5/1-2-1 (West 2008). In turn, the city's municipal code provides: "[a]ny authorized department or agency of the city may institute an administrative adjudication proceeding with the department of administrative hearings by forwarding a copy of a notice of violation or a notice of hearing, which has been properly served, to the department of administrative hearings." Chicago Municipal Code § 2-14-070 (amended Apr. 29, 1998). It is therefore clear that, pursuant to the authority granted by section 1-2-1 of the Illinois Municipal Code, the city's municipal code properly treats a filed and served notice of violation as the "written pleading" required to institute an administrative proceeding.

¶ 39    Moreover, plaintiff does not challenge the fact that both he and the ALO had copies of the "ADMINISTRATIVE NOTICE OF ORDINANCE VIOLATION" at the administrative hearing, a copy of this notice had been properly served upon plaintiff, and the "DEPARTMENT OF ADMINISTRATIVE HEARING COPY" of that document appears in the administrative record originally filed in the circuit court. As such, we find that the pleading requirements of both the Illinois Municipal Code and the city's municipal code were fully complied with in this case.

¶ 40                              3. Notice Requirements

¶ 41    Plaintiff next contends the administrative proceeding against him was improper because he did not receive proper notice.

¶ 42    The Illinois Municipal Code provides: "[p]arties shall be given notice of an adjudicatory hearing which includes the type and nature of the code violation to be adjudicated, the date and location of the adjudicatory hearing, the legal authority and jurisdiction under which the hearing is to be held, and the penalties for failure to appear at the hearing." 65 ILCS 5/1-2.1-5(b) (West 2008). In implementing this provision of the Illinois Municipal Code, section 2-14-074(a) of the city's municipal code provides: "[b]efore any administrative adjudication proceeding may be conducted, the parties shall be afforded notice in compliance with this section." Chicago Municipal Code § 2-14-074(a) (amended Apr. 29, 1998). That section further provides:

"Unless otherwise provided by law or rule, the issuer of a notice of violation or notice of hearing shall specify on the notice his or her name and department; where known, the name and address of the person or entity charged with the violation; the date, time and place of the violation; and the section of the code or departmental rule or regulation which was allegedly violated; and shall certify the correctness of the specified information by signing his or her name to the notice. A notice of hearing shall also include the date, time and location of the hearing and the penalties for failure to appear at the hearing." Chicago Municipal Code § 2-14-074(b) (amended Apr. 29, 1998).

¶ 43    Plaintiff's argument focuses on that portion of section 2-14-074(b) of the city's municipal code that requires that "the issuer of a notice of violation or notice of hearing shall specify

on the notice his or her name and department." Plaintiff complains that the notice of violation he received contained only the issuer's illegible signature, the notice therefore violated the requirements of section 2-14-074(b), and the notice he received thus failed to confer proper jurisdiction upon the city's department of administrative hearings.

¶ 44     We disagree. Even if we were to find that the notice plaintiff received contained a technical violation of section 2-14-074(b), the Administrative Review Law provides: "[t]echnical errors in the proceedings before the administrative agency or its failure to observe the technical rules of evidence shall not constitute grounds for the reversal of the administrative decision unless it appears to the court that such error or failure materially affected the rights of any party and resulted in substantial injustice to him or her." 735 ILCS 5/3-111(b) (West 2008); see also *McCleary v. Board of Fire & Police Comm'n of the City of Woodstock*, 251 Ill. App. 3d 988, 993 (1993) ("the appellate court may reverse an administrative ruling only if there is error which prejudiced a party in the proceeding"). Here, plaintiff does not even attempt to allege any prejudice resulting from this purported violation, relying solely on his assertion that the requirements of section 2-14-074(b) are mandatory and may not be disregarded.

¶ 45     Nor do we perceive how plaintiff could allege any prejudice. The record reflects that, in addition to the issuing officer's signature, the notice served upon plaintiff also included the officer's unit and badge number. The notice therefore contained all of the information needed for plaintiff or the ALO to determine the issuing officer's identity, and plaintiff cannot establish that any possible deficiency in the notice of violation materially affected his rights or resulted in any substantial injustice.

¶ 46                                   4. ALO's Failure to Issue Subpoena

¶ 47     Plaintiff next asserts that the ALO improperly denied his request to issue a subpoena requiring the testimony of the city officer that issued the notice of violation. In the administrative proceeding below, and again on appeal, plaintiff contends the ALO's refusal was improper because: (1) he had an absolute right to cross-examine the witnesses against him pursuant to the Illinois Municipal Code; and (2) the officer's testimony was necessary to bring clarity to the city's otherwise vague allegations regarding a violation of the weed ordinance, and in turn allow plaintiff to mount a proper defense to that charge.

¶ 48     First, we note that the Illinois Municipal Code provides: "[p]arties shall be provided with an opportunity for a hearing during which they may be represented by counsel, present witnesses, and cross-examine opposing witnesses. Parties may request the hearing officer to issue subpoenas to direct the attendance and testimony of relevant witnesses and the production of relevant documents." 65 ILCS 5/1-2.1-5(c) (West 2008). Furthermore, the city's municipal code provides: "[u]pon the timely request of any party to the proceeding, any person, who the administrative law officer determines may reasonably be expected to provide testimony which is material and which does not constitute a needless presentation of cumulative evidence, shall be made available for cross-examination prior to a final determination of liability." Chicago Municipal Code § 2-14-076(j) (amended Apr. 29, 1998). The city's code therefore further provides: "[t]he administrative law officer may issue

subpoenas to secure the attendance and testimony of relevant witnesses and the production of relevant documents. Issuance of subpoenas shall be subject to the restrictions contained in Section 2-14-080." Chicago Municipal Code § 2-14-076(f) (amended Apr. 29, 1998). Section 2-14-080 of the code in turn provides:

> "(a) An administrative law officer may issue a subpoena only if he or she determines that the testimony of the witnesses or the documents or items sought by the subpoena are necessary to present evidence that is:
>
> > (i) relevant to the case; and
> >
> > (ii) relates to a contested issue in the case." Chicago Municipal Code § 2-14-080(a) (amended Apr. 29, 1998).

¶ 49    We find nothing in these provisions to indicate that a subpoena *must* be issued to allow for cross-examination when requested by a party to an administrative hearing. Indeed, the Illinois Municipal Code quite clearly provides that while "[p]arties *shall* be provided with an opportunity" for an administrative hearing, at any such hearing parties "*may*" cross-examine opposing witnesses and "*may request* the hearing officer to issue subpoenas." (Emphasis added.) 65 ILCS 5/1-2.1-5(c) (West 2008). In turn, the city's municipal code provides that witnesses will be made available for cross-examination only after the ALO determines that they "may reasonably be expected to provide testimony which is material and which does not constitute a needless presentation of cumulative evidence." Chicago Municipal Code § 2-14-076(j) (amended Apr. 29, 1998). As such, the ALO is only authorized to issue a subpoena after a determination has been made that the requested subpoena is "*necessary* to present evidence" that is relevant. (Emphasis added.) Chicago Municipal Code § 2-14-080(a) (amended Apr. 29, 1998). We again note that these municipal code provisions were adopted under the authority granted by section 1-2-1 of the Illinois Municipal Code. 65 ILCS 5/1-2-1 (West 2008). As such, we reject plaintiff's argument that either the Illinois Municipal Code or the city's municipal code provides that–upon receiving plaintiff's request–the ALO was *required* to issue a subpoena and provide plaintiff with an opportunity to cross-examine the officer that issued the notice of violation.

¶ 50    Next, we address plaintiff's argument that the officer's testimony was necessary for plaintiff to defend against the city's assertion that he violated the weed ordinance. Specifically, plaintiff contends he:

> "was given a notice of violation that Plaintiff had 'weeds' on his property, but Plaintiff did not know *which* plants were the alleged 'weeds', and which were not; and Plaintiff needed to know this, in order to be able to mount a defense. Thus, if the issuing officer were to say, '*these* plants are weeds, and *those* plants are not weeds', then Plaintiff could present an appropriate defense ('these plants are not weeds', or, 'these plants are not ten inches tall', or 'these plants are not on my property')." (Emphases in original.)

¶ 51    We reject plaintiff's argument on this point. Here, plaintiff was issued a notice of violation indicating that he was in violation of the weed ordinance because of "WEEDS–GRASS OVER 10" TALL FRONT–AND BACK YARD." At the hearing on this notice of violation, the city also presented photographic evidence of these allegations. We fail to see how plaintiff was unable to present a defense without the officer's testimony about

which specific plants on plaintiff's property were or were not weeds. Plaintiff was free to present testimony and any other evidence of his own to rebut the city's allegations and evidence, including evidence supporting his assertion that *none* of the plants on his property were weeds.[2] Indeed, plaintiff did so in part by specifically testifying at the hearing that some of the plants on his property were not weeds but rather were mulberry or elm saplings.

¶ 52 As this court has recognized "[a]n administrative agency's decision regarding the conduct of its hearing and the admission of evidence is governed by an abuse of discretion standard and is subject to reversal only if there is demonstrable prejudice to the complaining party." *Matos v. Cook County Sheriff's Merit Board*, 401 Ill. App. 3d 536, 541 (2010). Here, the ALO ultimately denied plaintiff's request for a subpoena only after considering plaintiff's arguments and finding, "I think I can make a decision with the evidence I have." We find no abuse of discretion in that decision.

¶ 53 ### 5. Notice of Violation

¶ 54 Plaintiff next contends the administrative proceedings violated his due process rights because he was not adequately apprised of what, exactly, he had done to violate the weed ordinance. Specifically, he contends the city was required to tell him exactly which plants on his property were weeds. We disagree.

¶ 55 "Administrative complaints are not required to state the charges with the same precision, refinements, or subtleties as pleadings in a judicial proceeding." *Vuagniaux v. Department of Professional Regulation*, 208 Ill. 2d 173, 195 (2003). Indeed, "charges filed before an administrative agency 'need only be drawn sufficiently so that the alleged wrongdoer is reasonably apprised of the case against him to intelligently prepare his defense.' " *Id*. at 196 (quoting *Siddiqui v. Department of Professional Regulation*, 307 Ill. App. 3d 753, 757 (1999)). As noted above, in this case plaintiff was provided with a notice of violation specifically indicating that he was charged with violating the weed ordinance because of "WEEDS–GRASS OVER 10" TALL FRONT–AND BACK YARD." We fail to comprehend how plaintiff was not sufficiently put on notice of the allegations against him, and therefore reject his assertions with respect to this issue.

¶ 56 ### 6. Presentation of the City's Case

¶ 57 We next address plaintiff's assertion that the ALO improperly violated that portion of the city's municipal code which provides: "[i]n no event shall the case for the city be presented by an employee of the department of administrative hearings." Chicago Municipal Code § 2-14-076(c) (amended Apr. 29, 1998). Plaintiff claims that this provision was violated because the ALO:

---

[2]We also note that plaintiff was aware of the type of evidence that would be presented by the city, as the five-page written memorandum he presented at the hearing in support of his request for a subpoena included the assertion that "[o]n information and belief, the inspector bases his case upon certain photographs."

"was presented with photographs which did not specify the nature of the accusation against the Plaintiff. The [ALO] looked at the photographs, and constructed his *own* accusation from them, saying to himself, 'those plants, and those plants, and those plants, and those plants, are weeds, and those other plants, over there, are not weeds'. This is something the [ALO] *may not do*, because to construct his own accusation from an ambiguous set of photographs is to present the case for the city." (Emphasis in original.)

¶ 58   We disagree with plaintiff's contention. The city's municipal code provides that ALOs "shall have all powers necessary to conduct fair and impartial hearings including, but not limited to, the power to *** hear testimony; *** rule upon motions, objections, and the admissibility of evidence; *** preserve and authenticate the record of the hearing and all exhibits and evidence introduced at the hearing; [and] *** issue a final order which includes findings of fact and conclusions of law." Chicago Municipal Code § 2-14-040 (amended Apr. 29, 1998). Indeed, the very provision plaintiff cites goes on to specifically provide that "documentary evidence, including the notice of violation, which has been prepared by another department or agency of the city, may be presented at the hearing by the administrative law officer." Chicago Municipal Code § 2-14-076(c) (amended Apr. 29, 1998).

¶ 59   In this case, the ALO properly entered into the record, pursuant to the above-referenced authority, the notice of violation and photographic evidence *prepared by the city*. The ALO then *adjudicated* the city's claim in light of that evidence and the testimony provided by plaintiff. In no way did the ALO construct his "*own* accusation" from the city's presentations, nor did he violate that portion of the city's municipal code precluding him from presenting the city's case.

¶ 60                          7. Violation of Plaintiff's Right to Be Heard

¶ 61   Plaintiff next argues that the ALO denied him his right to be heard on the parkway ordinance violation at the administrative hearing. Plaintiff contends the ALO thus violated section 1-2.1-5(c) of the Illinois Municipal Code (65 ILCS 5/1-2.1-5(c) (West 2008)), which as noted above provides: "[p]arties shall be provided with an opportunity for a hearing during which they may be represented by counsel, present witnesses, and cross-examine opposing witnesses." We disagree.

¶ 62   The record reflects that on the day of the hearing in this case, plaintiff had actually been scheduled for administrative hearings on three separate municipal ordinances violations, *i.e.*, the two violations contained in the notice of violation at issue in this appeal and a separate notice of violation containing another unrelated violation. During plaintiff's presentation of his defense, the ALO told plaintiff that, because plaintiff had arrived late to the hearing, the ALO would only address the two violations at issue in this case. Specifically, the ALO stated: "We'll make a decision on this ticket, and on the second ticket I'm going to have to continue. Ok?" Plaintiff responded, "All right."

¶ 63   Plaintiff was then given over an hour to present his defense, which notably did include some defense to the parkway violation. However, the ALO ultimately indicated that plaintiff would have to complete his presentation due to other pending cases on the docket. Plaintiff

did so, and the ALO proceeded to rule on both ordinance violations contained in the notice of violation at issue here. When he did so, plaintiff indicated that he did not understand that the ALO would be proceeding on both the weed and parkway violations.

¶ 64     Now on appeal, plaintiff contends: "if he had known that he was going to be judged on *both* charges after his time expired, he would have abridged his defense of the first charge, and spent some time defending himself from the second charge. The [ALO] therefore conducted the hearing in such a way so as to deny Plaintiff his right to be heard." (Emphasis added.) However, the record does not support this assertion. Plaintiff was clearly informed of the ALO's decision as to how the hearing would proceed, and it is plaintiff himself that apparently misunderstood this decision despite responding, "All right." Moreover, the record indicates that the length of plaintiff's administrative hearing was truncated, at least in part, because he arrived late. In no way does this record reflect that the ALO somehow denied plaintiff his rights under the Illinois Municipal Code.

¶ 65                           8. Evidentiary Support for ALO's Decision

¶ 66     Having addressed plaintiff's procedural challenges to the administrative proceedings, we now address his substantive challenge to the ALO's ultimate finding that plaintiff had violated the city's weed and parkway ordinances.

¶ 67     As noted above, plaintiff was alleged to have violated the city's weed and parkway ordinances. The weed ordinance provides: "[a]ll weeds which have not been cut or otherwise controlled, and which exceed an average height of ten inches, are hereby declared to be a public nuisance." Chicago Municipal Code § 7-28-120(b) (amended Dec. 4, 2002). As such, the ordinance further provides: "[a]ny person who owns or controls property within the city must cut or otherwise control all weeds on such property so that the average height of such weeds does not exceed ten inches." Chicago Municipal Code § 7-28-120(a) (amended Dec. 4, 2002). In turn, the parkway ordinance provides: "[t]he owner or person in control of property contiguous to the parkway shall be responsible for watering and fertilizing parkway trees *** and for routine care of the parkway lawn. Routine care of the parkway lawn shall include periodic watering, weeding and mowing, as well as replacement of vegetation that dies." Chicago Municipal Code § 10-32-050 (amended July 10, 2002).

¶ 68     In support of its assertion that plaintiff had violated these two provisions, the city's notice of violation and the photos of plaintiff's property were presented at the administrative hearing and entered into the record. The notice itself includes the issuing officer's assertion that plaintiff's property exhibited "WEEDS–GRASS OVER 10" TALL FRONT–AND BACK YARD." It also asserted that plaintiff had demonstrated a "FAILURE TO MAINTAIN PARKWAY." The photos showed two views of plaintiff's front yard, a view of his backyard, and a view of the parkway in front of his property. These photos depict a host of various plants growing on both plaintiff's property and the parkway, many of which are quite obviously several feet tall.

¶ 69     In response to the city's evidence, plaintiff testified at the hearing that "a weed is a plant growing where you don't want it. All of the plants on my land are growing exactly where I want them." Plaintiff testified that he tended to all of his plants, some of which included

mulberry saplings and an elm tree sampling. Plaintiff further testified that he also generally tended his property and the parkway by cleaning it of garbage and other rubbish, and that none of the plants on his property harbored rodents. Finally, plaintiff challenged the photographs presented by the city on the grounds that they did not show his *entire* property, and therefore no conclusions about the average height of *all* the "weeds" on his property could be drawn from that evidence. On appeal, defendant reasserts these assertions and challenges to the city's case.

¶ 70    We reject plaintiff's contention that the ALO improperly found violations of the city's weed and parkway ordinances. We reiterate that the notice of violation itself was "prima facie evidence of the correctness of the facts specified therein." Chicago Municipal Code § 2-14-076(i) (amended Apr. 29, 1998). This included the fact that plaintiff's property exhibited "WEEDS–GRASS OVER 10" TALL FRONT–AND BACK YARD" and that plaintiff had demonstrated a "FAILURE TO MAINTAIN PARKWAY." These alleged violations need only have been established upon "proof by a preponderance of the evidence" (*id.*), and "[t]he findings and conclusions of the administrative agency on questions of fact shall be held to be prima facie true and correct" (735 ILCS 5/3-110 (West 2008)). On appeal, we review these findings to determine if they are against the manifest weight of the evidence, which exists:

> " 'only if the opposite conclusion is clearly evident.' [Citation.] Therefore, the 'mere fact that an opposite conclusion is reasonable or that the reviewing court might have ruled differently will not justify reversal of the administrative findings.' [Citation.] We are also mindful that, '[i]n examining an administrative agency's factual findings, a reviewing court does not weigh the evidence or substitute its judgment for that of an administrative agency.' [Citation.] If the record contains evidence to support the agency's decision, that decision should be affirmed. [Citation.]" *Marconi*, 225 Ill. 2d at 534.

¶ 71    The city's notice of violation and the photos presented at the hearing clearly provided sufficient evidentiary support for the ALO's finding that plaintiff had violated the weed and parkway ordinances. We note that the photos themselves were clearly admissible, even if they could be considered hearsay. See 65 ILCS 5/1-2.1-6 (West 2008) ("The formal and technical rules of evidence do not apply in an adjudicatory hearing permitted under this Division. Evidence, including hearsay, may be admitted only if it is of a type commonly relied upon by reasonably prudent persons in the conduct of their affairs."); Chicago Municipal Code § 2-14-076(h) (amended Apr. 29, 1998) (same). Moreover, other than asserting that the city was required to provide additional photos of his *entire* property, plaintiff never contended that the four photos presented below did not accurately reflect the condition of that portion of his property and the parkway actually depicted therein.

¶ 72    Furthermore, plaintiff's own testimony and other challenges to this evidence were insufficient to call the city's evidence into question. For example, the fact that plaintiff cleared his property and the parkway of rubbish was irrelevant to the question of the height of the weeds on his property or whether plaintiff did not periodically water, weed, and mow the parkway. Moreover, the city was not obliged to offer photographs of every square inch of plaintiff's property–as plaintiff appears to assert in his brief–in order to prove its allegation of a weed ordinance violation by a preponderance of the evidence. This standard simply

-16-

requires that "the evidence presented renders a fact more likely than not." *J.M. v. Briseno*, 2011 IL App (1st) 091073, ¶ 41.

¶ 73   We cannot say, in light of all the evidence, that the ALO's findings were so unsupported by evidence that the opposite conclusion is clearly evident. As such, we affirm the ALO's administrative determination that plaintiff violated the city's weed and parkway ordinances.

¶ 74              C. Circuit Court Proceedings and Constitutional Challenges

¶ 75   We now return to plaintiff's remaining challenges to the circuit court proceedings. First, plaintiff specifically contends the circuit court erred by quashing his two subpoenas, and erred more generally by refusing to allow him to present any evidence in support of his challenges to the two ordinances he was found to have violated. Plaintiff also contends the circuit court improperly rejected his constitutional challenges to those two ordinances on the merits. Because of the interrelated nature of the issues involved, our discussion of plaintiff's right to present evidence in support of his constitutional challenges will necessarily also involve a discussion of the ultimate merits of those constitutional challenges. For that reason, we will address all of these issues together in this section.

¶ 76   As an initial matter, and as plaintiff himself recognizes, section 3-110 of the Code provides that upon the filing of a complaint for administrative review "[n]o new or additional evidence in support of or in opposition to any finding, order, determination or decision of the administrative agency shall be heard by the court." 735 ILCS 5/3-110 (West 2008). As such, the circuit court properly refused to allow plaintiff to introduce any new evidence in support of the two counts of his complaint seeking administrative review. Moreover, as we have already discussed above, plaintiff's request for administrative review was also properly denied on the merits.

¶ 77   However, plaintiff contends the situation is otherwise with respect to his constitutional challenges. Plaintiff's constitutional challenges include: (1) facial constitutional challenges to the weed and parkway ordinances asserting they were void for vagueness because they each contain fatally unspecific terms and invite arbitrary enforcement; (2) an as-applied challenge to the weed ordinance asserting that this ordinance had, in fact, been arbitrarily enforced in this case; and (3) an assertion that the weed ordinance was unconstitutional for its failure to satisfy either the strict scrutiny or rational basis standard. We find that plaintiff has not demonstrated any reversible error with respect to the circuit court's refusal to hear any additional evidence in support of these challenges, nor has he demonstrated that the circuit court improperly rejected his constitutional challenges to the weed and parkway ordinances.

¶ 78                              1. Standard of Review

¶ 79   Our supreme court has recently summarized the relevant principles applicable to plaintiff's constitutional arguments, stating:

> "In construing the validity of a municipal ordinance, the same rules are applied as those which govern the construction of statutes. [Citation.] Statutes are presumed

constitutional, and the burden of rebutting that presumption is on the party challenging the validity of the statute to clearly demonstrate a constitutional violation. [Citation.] This court has a duty to uphold the constitutionality of a statute when reasonably possible [citation], and, therefore, if a statute's construction is doubtful, a court will resolve the doubt in favor of the statute's validity. [Citation.]" *Napleton v. Village of Hinsdale*, 229 Ill. 2d 296, 306-07 (2008).

¶ 80 Moreover, it is within the discretion of the circuit court to make evidentiary rulings, and such determinations are not to be overturned absent a clear abuse of discretion. *Simmons v. Garces*, 198 Ill. 2d 541, 570 (2002). Furthermore, reversal on appeal is not required unless an erroneous evidentiary ruling was substantially prejudicial, and the burden of establishing prejudice is on the party seeking reversal. *DiCosolo v. Janssen Pharmaceuticals, Inc.*, 2011 IL App (1st) 093562, ¶ 40. As such, any improper evidentiary rulings may be considered harmless error. *Wade v. City of Chicago*, 364 Ill. App. 3d 773, 784 (2006).

¶ 81                                2. Vagueness: Facial Challenge

¶ 82 First, we address plaintiff's facial challenge to the two ordinances on vagueness grounds. Plaintiff's complaint and specification of errors assert that the weed ordinance was facially invalid because the term "weed" is inherently subjective and thus fatally unspecific. He similarly challenges the "periodic" care requirement in the parkway ordinance as being fatally unspecific. Finally, plaintiff contends both ordinances are void for vagueness on the grounds that they invite arbitrary enforcement.

¶ 83 We find that plaintiff's facial challenges on vagueness grounds are untenable. As our supreme court has stated:

"Void for vagueness is a concept derived from the notice requirement of the due process clause. A statute can be impermissibly vague for either of two independent reasons: (1) if it fails to provide people of ordinary intelligence a reasonable opportunity to understand what conduct it prohibits; and (2) if it authorizes or even encourages arbitrary and discriminatory enforcement. [Citations.] As a general rule, a litigant whose conduct falls squarely within a statute's prohibition cannot complain of the vagueness of the law as applied to others. [Citation.] Moreover, in order to succeed on a vagueness challenge that does not involve a first amendment right, a party must establish that the statute is vague as applied to the conduct for which the party is being prosecuted." *Maddux v. Blagojevich*, 233 Ill. 2d 508, 544 (2009).

Stated differently, unless a municipal ordinance "implicates first amendment rights, plaintiff may not, as he did here, challenge the ordinance as vague on its face. [Citation.] If [the ordinance] does not implicate first amendment rights, plaintiff can only argue that the ordinance is vague as applied to himself, as applied to conduct for which he is being targeted." *O'Donnell v. City of Chicago*, 363 Ill. App. 3d 98, 105 (2005).

¶ 84 Here, plaintiff has asserted that the weed and parkway ordinances are unconstitutionally vague *on their face*. However, plaintiff's conduct–his alleged failure to control weeds on his property or to maintain the parkway– clearly fall within the terms of the two ordinances and it is equally clear that these two ordinances do not implicate any first amendment rights. As

such, plaintiff had no "standing" to make a facial challenge to those ordinances. See *Owens v. Department of Human Rights*, 403 Ill. App. 3d 899, 927 (2010). It necessarily follows that, with plaintiff's facial vagueness challenges being themselves invalid, these constitutional challenges were properly rejected on the merits by the circuit court. Moreover, no prejudice can therefore have resulted from the circuit court's refusal to allow plaintiff to present any evidence in support of them.

¶ 85                                    3. Vagueness: As-Applied Challenge

¶ 86     We next consider plaintiff's as-applied vagueness challenge to the weed ordinance. Plaintiff asserts that he should have been allowed to present additional evidence in support of his "as-applied" challenge that the weed ordinance had actually been arbitrarily enforced in this case, and that this constitutional challenge should not have been denied on the merits.

¶ 87     Specifically, plaintiff contends in his specification of errors, he indicated to the circuit court that he intended to present evidence that 11 other properties near his were also in violation of the weed ordinance but had not been cited with a violation. He further indicated that he would present evidence that he had himself complained to the city about these properties, but no action was taken. Plaintiff contends if this evidence would have been presented, his as-applied challenge would have been successful.

¶ 88     It is well established that where "a statute is challenged on the grounds that it violates the constitution, the constitutional issues may be raised in the context of a complaint for administrative review." *Chicago Bar Ass'n v. Department of Revenue*, 163 Ill. 2d 290, 297 (1994) (citing *Howard v. Lawton*, 22 Ill. 2d 331, 333 (1961)). However, it has also been "quite established that if an argument, issue, or defense is not presented in an administrative hearing, it is procedurally defaulted and may not be raised for the first time before the circuit court on administrative review." *Cinkus v. Village of Stickney Municipal Officers Electoral Board*, 228 Ill. 2d 200, 212 (2008). More specifically:

> "This rule of procedural default encompasses a litigant's right to question the validity of a statute. To be sure, an administrative agency lacks the authority to declare a statute unconstitutional, or even to question its validity. Nonetheless, this court has repeatedly advised that a party in an administrative proceeding should assert a constitutional challenge on the record before the administrative tribunal, because administrative review is confined to the evidence offered before the agency. Such a practice avoids piecemeal litigation and, more importantly, allows opposing parties a full opportunity to refute the constitutional challenge." *Id.* at 214.

¶ 89     Notably, these principles are equally applicable to declaratory judgment actions, and even where such a claim for declaratory judgment alleges that "a facially valid statute, ordinance, or administrative rule 'is applied in a discriminatory or arbitrary manner, the rule generally prevails that recourse must be had in the first instance to the appropriate administrative board.' " *Beahringer v. Page*, 204 Ill. 2d 363, 374 (2003) (quoting *Bank of Lyons v. County of Cook*, 13 Ill. 2d 493, 495 (1958). As such, it has been recognized that "a challenge to a statute as applied to a litigant relies upon certain factual bases. Thus, when a litigant presents an as-applied challenge, 'an evidentiary record is indispensable because administrative

-19-

review is confined to the record created before the agency.' " *Gruwell v. Department of Financial & Professional Regulation*, 406 Ill. App. 3d 283, 298 (2010) (quoting *Arvia v. Madigan*, 209 Ill. 2d 520, 528 (2004)).

¶ 90　　　In light of the above, it is clear that the circuit court properly rejected plaintiff's request to introduce any additional evidence in support of this argument. Plaintiff's as-applied challenge to the weed ordinance was necessarily a factual one, and the facts supporting that challenge could only be presented in the administrative proceeding.

¶ 91　　　Moreover, we also find that the trial court properly rejected this challenge on the merits. Again, the general thrust of plaintiff's as-applied challenge to the weed ordinance is that the city did not enforce the ordinance against other properties in his neighborhood and, therefore, the city's enforcement in this case was arbitrary. Indeed, he testified at the administrative hearing that there were several properties near his which had "plants growing on them in excess of 10 inches" but were not subject to any enforcement.

¶ 92　　　Plaintiff cites to no authority supporting the notion that such evidence would support his contention that the weed ordinance was actually enforced against him in an arbitrary or discriminatory way, nor is this court aware of any. Indeed, "in an 'as-applied' challenge, the party challenging the statute contends that the application of the statute in the *particular context* in which the challenger has acted, or in which he proposes to act, would be unconstitutional. An 'as-applied' challenge requires a party to show that the statute violates the constitution as the statute applies to *him*." (Emphases added.) *People v. Brady*, 369 Ill. App. 3d 836, 847 (2007). Thus, plaintiff's argument is, as a whole, without merit.

¶ 93　　　Furthermore, the evidence presented here established that plaintiff had many tall weeds on his property. The administrative record also includes evidence that plaintiff was a repeat offender in this regard, and that the condition of his property was attracting rodents. Plaintiff's testimony to the contrary was, as we have already discussed, rejected by the ALO in a proper exercise of his discretion. On the basis of this record, plaintiff cannot establish that the city's weed ordinance was improperly enforced against him.

¶ 94　　　　　　　　　　　4. Strict Scrutiny and Rational Basis

¶ 95　　　Finally, we address plaintiff's remaining constitutional challenge to the weed ordinance. Plaintiff asserts that the distinction the ordinance makes between plants that are "weeds" and plants that are not weeds bears no rational relationship to the ordinance's "ostensible" purpose, which he describes as public heath, safety, or sanitation. Indeed, plaintiff further asserts that because this ordinance interferes with private property rights, it must actually pass the strict scrutiny test for constitutionality. Lastly, plaintiff asserts that he was prepared to introduce evidence to support these assertions, and that the circuit committed reversible error by refusing to allow the presentation on any such evidence.

¶ 96　　　In order to properly analyze plaintiff's claim that the weed ordinance is unconstitutional, we must first determine the nature of the right alleged to be infringed. *Napleton*, 229 Ill. 2d at 307. Indeed, it is recognized:

　　　"Classification of the right affected is critical because the nature of the right dictates the level of scrutiny a court must employ in determining whether the statute in question

comports with the constitution. [Citation.] Courts examining the constitutional validity of a statute will ordinarily apply the rational basis test. [Citation.] Under this test, a statute will be upheld if it bears a rational relationship to a legitimate legislative purpose and is neither arbitrary nor unreasonable. [Citations.] In contrast, where a classification has been made based upon race or national origin [citation], or the constitutional right at issue is one considered to be 'fundamental' [citation], the presumption of constitutionality is weaker, and courts must subject the statute to the more rigorous requirements of strict scrutiny analysis. [Citation.] In order to survive strict scrutiny, the measures employed by the government body must be necessary to serve a compelling state interest, and must be narrowly tailored thereto, *i.e.*, the government must use the least restrictive means consistent with the attainment of its goal. [Citation.]" *Id.*

¶ 97    We first reject plaintiff's contention that this matter requires the application of the strict scrutiny standard because the weed ordinance interferes with his right to use his property, which plaintiff describes as a "fundamental constitutional right." Our supreme court has only recently rejected just such an argument in *Napleton*. In that case, the court first noted that it had previously recognized that "fundamental rights include the expression of ideas (*i.e.*, freedom of speech), participation in the political process, travel among the states and privacy with regard to the most intimate and personal aspects of one's life." *Id.* at 307-08.

¶ 98    In rejecting the argument that a municipal zoning ordinance was subject to heightened constitutional scrutiny because it impacted on private property rights, the court held that "the rights plaintiff alleges to be infringed by the enactment of the zoning code amendments do not fall within the category of fundamental rights set forth above, nor do they involve a suspect classification. Therefore, strict scrutiny does not apply." *Id.* at 308-09. The court went on to apply the rational basis standard to the constitutional challenge in that case (*id.* at 309), and we will similarly apply that same standard to plaintiff's challenge here.

¶ 99    As has been repeatedly recognized, the rational basis standard is highly "limited and deferential." *Hudson v. YMCA of Metropolitan Chicago, LLC*, 377 Ill. App. 3d 631, 638 (2007). Indeed, our supreme court has stated that a law will be found constitutional under this standard:

"so long as it is reasonably designed to remedy the evils the legislature has determined to be a threat to the public health, safety, and general welfare. [Citation.] The statute need not be the best means of accomplishing the legislature's objectives. [Citation.] As long as the statute is rationally related to a legitimate state interest, it will be upheld. [Citation.]

Whether a statute is wise [or] whether it is the best means to achieve the desired result are matters left to the legislature, and not the courts. [Citation.] The judgments made by the legislature in crafting a statute are not subject to courtroom fact finding and may be based on rational speculation unsupported by evidence or empirical data. [Citation.] Under the rational basis test, the court may hypothesize reasons for the legislation, even if the reasoning advanced did not motivate the legislative action. [Citation.] If there is any conceivable basis for finding a rational relationship, the law will be upheld. [Citation.]" *People ex rel. Lumpkin v. Cassidy*, 184 Ill. 2d 117, 124

(1998).

¶ 100　　We find that the weed ordinance easily passes this standard, even if solely on the grounds of aesthetics. The United States Supreme Court long ago recognized that the "concept of the public welfare is broad and inclusive. [Citation.] The values it represents are spiritual as well as physical, aesthetic as well as monetary. It is within the power of the legislature to determine that the community should be beautiful as well as healthy, spacious as well as clean ***." *Berman v. Parker*, 348 U.S. 26, 33 (1954). That court has more recently reiterated that it is "well settled that the state may legitimately exercise its police powers to advance esthetic values." *Members of City Council of the City of Los Angeles v. Taxpayers for Vincent*, 466 U.S. 789, 805 (1984).

¶ 101　　We find the city's prohibition on properties containing weeds averaging over 10 inches tall to be rationally related to a legitimate interest in aesthetics. See *City of Montgomery v. Norman*, 816 So. 2d 72, 79 (Ala. Crim. App. 1999) (upholding similar municipal weed ordinance as constitutional exercise of police power in support of legitimate public interest in aesthetics). Moreover, because the ordinance could be properly based, *at a minimum*, upon the city's "rational speculation unsupported by evidence or empirical data," no evidence plaintiff might have introduced could have altered this finding. We therefore find that the circuit court correctly rejected this constitutional challenge on the merits, and also committed no reversible error by refusing to allow plaintiff to introduce any supporting evidence.

¶ 102　　　　　　　　　　　　　　　　III. CONCLUSION

¶ 103　　For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 104　　Affirmed.